## BOARD OF COM'RS OF CREEK COUNTY v. BARTLETT.

No. 8016—Opinion Filed March 9, 1920.

(Syllabus by the Court.)

1. **Taxation—Exemption—Purchaser of Indian Land.**

A purchaser from an Indian cannot claim the benefit of the tax exemption given by the Creek Supplemental Agreement of June 30, 1902 (32 Stat. at L. 500, chap. 1323), sec. 16, requiring each Creek citizen to select a homestead allotment, which shall be non-taxable and inalienable for a specific period, and recognized by the provisions of the Oklahoma Enabling Act and Constitution, which preserved the rights of person and property of the Indians so long as such rights should remain unextinguished, and provided that nothing in the Constitution shall be construed to limit or affect the authority of the United States respecting the Indians or their lands, property, or rights, and exempted from taxation such property as might be exempt by reason of treaty stipulations existing between the Indians and the United States, or by federal laws during the force and effect of such treaties and laws, since, under the act of May 27, 1908 (32 Stat. at L. 312, chap. 199), which removed the existing restrictions on the alienation of the homestead allotments, thereby enabling the allottee to sell the land, "all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottee."

2. **Same.**

The judgment of the trial court affirmed in part and reversed in part, and the cause remanded with directions.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by H. U. Bartlett against the board of commissioners of Creek county to test taxability of two tracts of land which were previously two Indian allotments. Judgment for plaintiff as to one tract, and for defendant as to the other, and both parties bring error. Affirmed in part and reversed in part.

Roy T. Wildman and M. Morris Harrison, for plaintiff in error.

Lashley & Harwell, for defendant in error.

JOHNSON, J. This is an appeal from the district court of Creek county.

The trial was had to the court below without the intervention of a jury and upon a stipulation of the parties as to the facts, and under such stipulation the only question involved is as to the right of the state to tax the homestead of a Creek Indian allottee,

after the same has passed out of the hands of the original allottee into the hands of citizens of the United States not citizens of the Creek tribe of Indians, by virtue of bona fide purchase from the original allottees or their legal heirs.

The trial court held that the homestead allotment of a citizen of the Creek Nation that was selected and patent issued therefor prior to taking effect of the provisions of the act of Congress of May 27, 1908, was taken by such allottee upon the condition and with the understanding and agreement that the same should remain nontaxable for a period of 21 years from date of deed therefor, and that such exemption from taxation runs with the land and that such land is exempt from taxation in the state of Oklahoma whether the title remained in the original allottee or duly and legally passed to a non-citizen of the Creek Nation, and that neither the state of Oklahoma nor any municipality thereof has the power to impose taxes upon said homestead.

The trial court also held that where a homestead allotment of a citizen of the Creek Nation was not selected and patent issued therefor until after the provisions of the act of May 27, 1908, were in full force and effect, such homestead was subject to taxation by the state of Oklahoma, or any municipality thereof, after the same had passed into the hands of citizens of the United States, not citizens of the Creek Indian Tribe, by virtue of bona fide purchase from the original allottee or his legal heirs.

The land involved is the homestead allotment of Casakwa Gouge, being the SE¼ of the SE¼ of sec. 27, twp. 18 north, range 10 east, who was a minor full-blood Creek citizen, and the NW¼ of the NE¼ of sec. 27, twp. 14 north, range 8 east, being the homestead allotment of Leona Lowe, a Creek citizen by blood.

The said Casakwa Gouge was a minor, and her allotment was selected and the patent therefor issued on July 27, 1908, and subsequent thereto she died and her heirs, under the provisions of the act of May 27, 1908, conveyed her homestead to the plaintiff, H. U. Bartlett, who, it is alleged, has the title to the said land, and that the assessor of Creek county assessed said land for the years of 1914 and 1915, and the same was duly and legally placed on the treasurer's books of Creek county, Oklahoma, and the taxes thereon for said years duly extended upon said books; that the said Leona Lowe was also a minor, and that her allotment was selected and patent issued thereon on March 11, 1903,

and subsequent thereto she died, and her heirs have legally and pursuant to law conveyed said land to the plaintiff, H. U. Bartlett, which tract was also assessed and extended upon the tax books of said county for said years.

It was further stipulated:

"That in each of the foregoing deeds, that part of section 7 of said Original Creek Treaty appears as follows: 'Each citizen shall select from his allotment forty (40) acres of land as a homestead, which shall be non-taxable and inalienable and free from any incumbrance whatever, for twenty-one (21) years, for which he shall have a separate deed, conditioned as above.' "

That paragraph 1 of section 16 of said Supplemental Creek Treaty is, in part, as follows:

"Each citizen shall select from his allotment forty (40) acres of land, or a quarter of a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance, whatever, for twenty-one (21) years, from date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear."

That section 23 of the Original Creek Treaty provides:

"Any allottee accepting such deed shall be deemed to assent to the allotment and conveyance of all lands of the tribe, as provided herein, and as a relinquishment of all his rights, title and interest in and to the same, except in the proceeds of the lands reserved from allotment."

That the Supplemental Creek Treaty provides, in section 30 thereof, as follows:

"This agreement is intended to modify and supplement the agreement ratified by said act of Congress, approved March 1, 1901, and shall be held to repeal any provision in that agreement or in any prior agreement, treaty or law in conflict herewith."

It is further stipulated that each of the homestead patents issued to the above allottees contained a provision provided for in paragraph 2 of section 16 of the Supplemental Creek Treaty above quoted. H. U. Bartlett is not a Creek citizen.

It is further stipulated that if the aforesaid lands are taxable, the levy and assessment for the year complained of were in regular form and legally made.

It is further stipulated that the only question raised or intended to be raised in this proceeding is, "Is the homestead of a Creek citizen taxable after it has passed out of the hands of the original allottee prior to the expiration of 21 years after date of the issuance of the patent: first, where the allottee

dies; second, where the allottee voluntarily conveys?"

The findings of the trial court were that the homestead selected by Leona Lowe on March 3, 1903, was exempt from taxation, and the court rendered a judgment accordingly, and from this judgment the defendant, the board of county commissioners of Creek county, has appealed. That the homestead selected by Casakwa Gouge on the 27th day of July, 1908, was taken subject to said act, and that as soon as the restrictions from alienation were removed from said allotment by the death of the allottee and it was alienated by the heirs to the plaintiff herein, and such homestead became immediately taxable and subject to all other civil burdens as though it were the property of any other citizen of the state of Oklahoma, and the court rendered accordingly a judgment in favor of the defendant. From this judgment the plaintiff has appealed.

Each party appealing here has made the same assignments of error: (1) That the court erred in overruling motion for new trial; (2) in not rendering judgment in their favor upon the agreed statement of facts.

The plaintiff, H. U. Bartlett, in support of his contention that the land mentioned is exempt from taxation for the full period of 21 years, as stated in the Creek Agreement, regardless of the provisions of the act of Congress of May 28, 1908, and regardless of the fact that the title to the land has passed out of the allottee and her heirs into the plaintiff, who is a citizen of the United States and a noncitizen of the Creek Tribe of Indians, cites the Original Creek Agreement, chap. 676, 31 Stat. at L. 861, and Supplemental Creek Agreement, effective August 8, 1902, chap. 13, and 22 St. at L. 500; act of April 26, 1906, chap. 1876, 34 Stat. at L. 137; section 1 of the Enabling Act of state of Oklahoma, and sections 409 and 413, Williams' Constitution; and the decisions of the Supreme Court of the United States in the cases of New Jersey v. Wilson, 7 Cranch, 164; Choate v. Trapp, 224 U. S. 665, 56 L. Ed. 941; Gleason v. Wood, 224 U. S. 679, 56 L. Ed. 947; English v. Richardson, 224 U. S. 680, 56 L. Ed. 949.

The plaintiff below, H. U. Bartlett, has filed no brief.

It was held by this court in the case of Board of County Commissioners of Muskogee County et al. v. Fink et al., 60 Okla. 67, 159 Pac. 470 (affirmed, 248 U. S. 399, 63 L. Ed. 188), par. 1 of syllabus:

"Grantees of a Creek homestead allotment, conveyed under authority of the act of Congress of May 27, 1908, chap. 199, 35 Stat. 312, take their title to such allotment under "the terms of said act, and cannot go behind it and claim the exemption of such allotment from taxation under the provisions of the act of Congress of June 30, 1902, chap. 1323, 32 Stat. 500."

It will be observed that in the Fink case, supra, this court held against the contention of the plaintiff in the instant case. The case was appealed to the Supreme Court of the United States, and the judgment of this court was affirmed, and in delivering the opinion of that court, Mr. Justice McKenna, speaking for the court, said:

"The contention based on this act is that by the Creek Supplemental Agreement, supra, the nontaxability and inalienability and freedom from encumbrance of the land were correlatives, and to a certain extent, therefore, interdependent—a combination of limitations and rights—and as they existed together they disappeared together. And their coexistence depended upon the Indians, and because it did there was no limitation or infringement of rights or impairment of contract. Plaintiffs, it is further contended, are in no better situation, as they only got title by virtue of the act of May 27, 1908, removing the restriction upon alienation, and they cannot avail themselves of it and repudiate it at the same time.

"The Supreme Court of the state yielded to these contentions and gave special effect to the act of 1908, which it considered 'a comprehensive revision of the laws relating to the Five Civilized Tribes and their lands,' that by it 'the free right of alienation was granted', and as the plaintiffs 'took their title to the lots they are seeking to exempt from taxation by virtue of the terms of this act, they cannot go behind it.' But for that act they could not have purchased the lands in question. They took subject to all the conditions of that act, and they cannot now claim the benefits of the exemption from taxation granted to the allottee by the Creek Supplemental Agreement. Goudy v. Meath, 203 U. S. 146, 51 L. Ed. 130, 27 Sup. Ct. Rep. 48, 60 Okla. 67, 159 Pac. 470.

"In resistance to the contentions of the defendant and the conclusions of the court, plaintiffs adduce Choate v. Trapp, 224 U. S. 665, 56 L. Ed. 941, 32 Sup. Ct. Rep. 565, and certain cases decided upon its authority; that is, Gleason v. Wood, 224 U. S. 679, 56 L. Ed. 947, 32 Sup. Ct. Rep. 571; English v. Richardson, 224 U. S. 680, 56 L. Ed. 949, 32 Sup. Ct. Rep. 571.

"Choate v. Trapp has not the extent assigned to it. In that case the state of Oklahoma undertook to tax lands which were yet in the hands of the Indians, asserting the right simply because of the removal of the restrictions upon alienation by the act of May 27, 1908, supra. The reply of this court was that the law (Curtis Act of June 28, 1898 [30 Stat. at L. 505, ch. 517], as modified by the act of July 1, 1902 [32 Stat. at L. 641, chap.

1362¹), provided that all of the lands allotted should 'be nontaxable while the title remained in the original allottee.' There was no question in the case, and could not be, of the effect of alienation,—an exercise of the right conferred by the act of May 27, 1908, and the consequence of such exercise. It is true, it was said, that 'exemption and nonalienability were two separate and distinct subjects,' and that 'one conferred a right and the other imposed a limitation.' The distinction was apt for that case. The state contended that there was no tax exemption, but that that provision was only directly against the absolute alienation of the land. This was, in effect, a contention that the power of alienation, unexercised, was the same as the power exercised, and to correct this confusion it was declared that the provision exempting from taxation was a property right. But it was a property right to the Indian, preserved to him not only for his own interest, but in the interest of the policy of the United States regarding him. Kansas Indians (Blue Jacket v. Johnsons County) 5 Wall. 737, 18 L. Ed. 667; United States v. Rickert, 188 U. S. 432, 47 L. Ed. 532, 23 Sup. Ct. Rep. 478, cases cited in Choate v. Trapp. At first his interest was put beyond his control; by the act of May 27, 1908, it was committed to his control, this also satisfying the policy of the United States under the changed conditions. It invades no right of the Indian, therefore, to make the alienation of the land a surrender of the exemption from taxation, and we concur in the conclusion of the Supreme Court of the state that plaintiffs, having taken title under the act, cannot repudiate its conditions and its manifest policy. New Jersey v. Wilson, 7 Cranch, 164, 3 L. Ed. 303, is not in point. We are not dealing with rights in the abstract; we are dealing with right under special conditions, and, as determined by acts of the parties under a law of Congress which was availed of by the Indian and a grantee of the Indian, and which, therefore, bound them by its conditions, and subjected the land in the hands of the grantee to the usual burdens of government.

"It is an error to suppose that this takes anything of value from the Indian. We may here invoke the commonplace, for it is commonplace to say that we only know the value of a thing by that which makes its worth. Under the restriction against the alienation the land had no worth but in its uses; the restriction removed, it had the added worth of exchangeability for other things,—a power of sale was conferred. To say there was no value in that power is to contradict the examples and estimations of the world. It may be that if exemption from taxation went with the land, it might become an element in the price (worth in money) which the Indian might ask and receive; but that was not of concern to the purpose of the law which was to give to the Indian all of the attributes of ownership, to give him a mastery of his property, equal to that of other owners of property, and nothing more, and this consummated the new policy of Congress."

We have carefully considered the question involved, and are clearly of the opinion that both tracts of land were subject to taxation, and the judgment of the trial court wherein he so held as to the homestead of Casakwa Gouge is affirmed, and the judgment as to the homestead of Leona Lowe is reversed. The cause is remanded, with directions to the trial court to proceed further in accordance with the views herein expressed.

OWEN, C. J., and RAINEY, PITCHFORD, HIGGINS, and BAILEY, JJ., concur; KANE, McNEILL, and HARRISON, JJ., not participating.