### UNITED STATES v. GRAY et al.

(Circuit Court of Appeals, Eighth Circuit. September 11, 1922.)

No. 5972.

1. **Taxation** ☞181—**Contract between grantor and Indian grantee cannot affect question of taxation.**

Provisions in a deed conveying property to an Indian, reciting that it was purchased with proceeds of restricted land and was not alienable by grantee during the restricted period, cannot affect the question whether or not the property is subject to local taxation.

2. **Taxation** ☞181—**Real estate purchased for Indian with trust funds held not exempt from taxation.**

Lots previously subject to taxation, purchased for a Creek Indian with money held in trust from the proceeds of restricted land, sold with approval of the Secretary of the Interior, pursuant to Act May 27, 1908, § 1, *held* not exempt from state taxation.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit in equity by the United States against E. W. Gray and others. Decree for defendants, and the United States appeals. Affirmed.

For opinion below, see 271 Fed. 747.

O. H. Graves, Sp. Asst. U. S. Atty., of Muskogee, Okl. (Frank Lee, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

N. A. Gibson, of Muskogee, Okl. (J. L. Hull and T. L. Gibson, both of Muskogee, Okl., Ben D. Gross, of Eufaula, Okl., and George F. Short and William H. Zwick, both of Oklahoma City, Okl., on the brief), for appellees.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Before LEWIS and KENYON, Circuit Judges, and JOHNSON, District Judge.

LEWIS, Circuit Judge. It appears from the record in this case that W. C. Showman and wife executed and delivered a warranty deed of date December 1, 1913, by which they conveyed two lots in the Town of Eufaula, Okl., to Lizzie Lewis, an enrolled Creek Indian, for $475.00, which, as recited in the consideration clause, was "from the proceeds of the sale of restricted lands allotted to the said Lizzie Lewis. * * * The same being funds held by the United States in trust subject to disbursement under the supervision of the Secretary of the Interior"; and the habendum clause contains this:

"Subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto, executed during the lifetime of said grantee at any time prior to April 26, 1931, shall be of any force and effect or capable of con- firmation or ratification, unless made with the consent of and approved by the Secretary of the Interior."

There appears to have been attached to the deed a notice which went to record with it, signed by the Indian Superintendent, wherein it is recited that the funds with which the lots were purchased were de- rived from the sale of restricted lands allotted to the grantee, and that the purchase was made and the deed executed and approved pursuant to the Act of Congress of May 27, 1908.

On October 1, 1919, appellant brought this suit and stated in its complaint the facts that have been recited, and attached to the com- plaint, as a part thereof, a copy of said deed and notice, and then al- leged that the lots were non-taxable during the life of the grantee prior to April 26, 1931, that defendants, McIntosh county and its officials, had caused them to be assessed for taxes for 1914 to 1918, both inclu- sive, that they were threatening to sell the lots for the unpaid taxes, that they constituted a cloud on the title, that a sale would further cloud the title, that Lizzie Lewis was in possession of the lots, and prayed for injunctive relief against the threatened sale and against fu- ture assessments, and for the protection of Lizzie Lewis as appellant's ward in the full possession and use of the lots. After answer the cause was submitted on a written agreement as to the facts, including with those which have been stated the additional fact that the lots, at the date of the purchase and theretofore, had been a part of the taxable real property in McIntosh County, and were at that time subject to assess-- ment and levy free from any restrictions in that regard. Other facts agreed to are hereinafter set forth.

[1, 2] The sole controversy presented here is, whether the lots, on being purchased by Lizzie Lewis, became exempt from taxation. We first observe that the deed is a contract between Showman and her only, and they could not, by any agreement that they made, exempt the property. It was within their power to embody in that contract restrictions against voluntary alienation by the grantee; and a recita- tion of the source from which the consideration came as a part of the contract added nothing, perforce of the deed itself, to accomplish the

end sought by appellant. So that, if there be exemption, it is brought about by the facts of the transaction and not by virtue of any inherent force in the terms of the contract of purchase and conveyance between the parties as shown by the deed. We are brought, then, to consider the effect of the facts admitted in the pleadings, plus those that are stipulated. The grantee sold her homestead allotment with the consent and under the supervision of the Secretary of the Interior, which was inalienable at the time without his consent (Act May 27, 1908, § 1, 35 Stat. 312); the proceeds therefor were paid to the Superintendent for the Five Civilized Tribes and held by him as a trust fund for Lizzie Lewis; with a portion of those funds there were purchased for Lizzie Lewis the lots conveyed by Showman's deed, and the purchase price therefor was disbursed by the Superintendent under the orders, rules and regulations of the Secretary of the Interior for the benefit of Lizzie Lewis. The record does not disclose the amount for which the homestead was sold, nor whether she had other lands or property nor the value thereof, nor whether the two lots were purchased for her for residence purposes by her, nor whether they are rented and occupied for commercial or other purposes, or are vacant and unimproved, nor her necessities.

While there is no express provision in the Constitution prohibiting the States from taxing the means and instrumentalities of the general Government, yet it is established beyond question that exemption from such taxation rests upon necessary implication. McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, and cases which follow it establishing that principle need not be further noticed. It would follow that if these two lots were purchased as necessary or appropriate means to be used in caring for, educating or furnishing a needed home for Lizzie Lewis as one of the Government's wards, they would be beyond the reach of the State's power to exact, by way of taxation, a tribute or toll laid upon them for local or State purposes. Again, if Congress had empowered the Secretary at his discretion to invest these funds in other lands or lots, and had expressly provided that they should be exempt from tax levies, the question would doubtless not be here. U. S. v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532. But the fact that funds arising from the sale of allotments are trust funds over which the Secretary is given some power of disposition does not, in our judgment, give him a right, without more, to invest them in real estate. The established rule is to the contrary, 2 Perry on Trusts (5th. Ed.) § 606 et seq.; much less can it be said that every such investment, per se, would withdraw the property purchased from taxation to which it had theretofore been subject. Counsel for appellant do not contend that that result would flow from the facts that have been stated, but rely in connection therewith on the clause in section 1 of the Act of May 27, 1908, dealing with the removal of the restrictions against alienation of allotments, reading thus:

"Except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

Conceding that he is thereby given authority, in disposing of the proceeds for the benefit of the Indian, to invest them in real estate, there is no suggestion or intimation of a legislative intention in that clause or section or Act, or elsewhere, so far as we are advised, that the real estate so purchased shall become exempt. The subject of exemption was in mind when the clause relied upon was under consideration. The section of which it is a part dealt with the disposal of lands that were exempt, and if it was believed that the Secretary was given power to reinvest those funds in other lands, it is to be assumed that they also would have been declared to be exempt or inalienable, if that was intended. Where the right to claim exemption is rested on a legislative purpose to grant it, Mr. Cooley says:

"The intention to exempt must in any case be expressed in clear and unambiguous terms." Cooley on Taxation, p. 146.

In Goudy v. Meath, 203 U. S. 146, 27 Sup. Ct. 48, 51 L. Ed. 130, the court, in considering the question as to whether lands owned by an Indian were exempt from taxation, said:

"His property, unless exempt, became subject to taxation in the same manner as property belonging to other citizens, and the rule of exemption for him must be the same as for other citizens—that is, that no exemption exists by implication but must be clearly manifested."

We think the clause relied upon falls far short of disclosing any such purpose. Appellant relies also on U. S. v. Thurston County, 143 Fed. 287, 74 C. C. A. 425 and U. S. v. Law, 250 Fed. 218, 162 C. C. A. 354, both of which were in this court. In the Thurston County Case there had been no reinvestment of the funds received from the sale of Indian lands. They were being held in trust under control by Government officials for application to the necessities of the Indian, to be disbursed in small payments to him from time to time. The controversy there was over the question as to whether the funds which had been deposited in a bank in Thurston County were subject to taxation. The Indians to whom the lands had been allotted had died and their heirs were permitted by the Secretary to sell the allotments on condition that the proceeds of the sales should be deposited to their respective individual credits in a bank selected by the Commissioner of Indian Affairs, subject to their respective checks for not exceeding ten dollars in any one month when approved by the Indian Agent or officer in charge, and checks for sums in excess of ten dollars per month upon the approval of the Agent when specifically authorized by the Commissioner of Indian Affairs. The tax was assessed against the fund while it was on deposit in the bank and held subject to be checked against as above noted. It is said in the opinion of this court that the United States had possession of the proceeds at the time it was sought to levy a tax against them, and that—

"The lands and their proceeds, so long as they are held or controlled by the United States and the term of the trust has not expired, are alike instrumentalities employed by it in the lawful exercise of its powers of government to protect, support, and instruct the Indians, for whose benefit the complainant holds them, and they are not subject to taxation by any state or county."

The manner and amounts in which the funds were to be checked against make it very clear that they were to be distributed in such small sums as the necessities of the Indians might from time to time require, and that that was a precautionary measure against the chance of their being squandered and put to no good or useful purpose by the Indians if the whole or any considerable part were paid to them at one time. The funds were thus clearly an instrumentality and means utilized by the Government in furtherance of its policy in caring for the best interests of its wards. In the Law Case this court declined to pass upon the question whether lands that had been purchased with the proceeds from the sale of the restricted allotment were exempt from taxation. It was not necessary that it do so. The deed in that case contained the same recital as to the source of the consideration paid for the purchased premises, and also the same condition in the habendum clause, that the deed here contains. The question involved was, whether a mortgage given on the purchased lot by the Indian was valid. It was held that she had no right or power to give it, and that it was void; and nothing else is decided in that case. In McCurdy v. U. S., 246 U. S. 263, 38 Sup. Ct. 289, 62 L. Ed. 706, the court had under consideration the same question presented here, which arose, however, under other Acts of Congress relating to the Osage Tribe. The Act of April 18, 1912 (37 Stat. 86), authorized the Secretary of the Interior to pay to the Osage allottee in his discretion, under rules and regulations prescribed by him, all or part of trust funds held in the treasury for his benefit. The Secretary under that authority paid out $1,750 for a lot in Pawhuska, purchased for an Osage Indian. We think the following remarks in the opinion in that case applicable to this:

"The Secretary is authorized to prescribe the rules and regulations under which such releases shall be made; but he is not given authority to exercise control of any property in which the funds released may thereafter be invested, or otherwise to create with the release funds a governmental instrumentality for the protection of the Osages. * * * While an Indian is still a ward of the Nation, there is power in Congress even to reimpose restrictions on property already freed; * * * but Congress did not confer upon the Secretary of the Interior authority to exercise such power under the circumstances of this case or to give to property purchased with released funds immunity from state taxation."

For these reasons we are of the opinion that the lots were not exempted from taxation because of their purchase under the circumstances stated; and that the District Court did not err in dismissing the complaint.

Affirmed.