## BAGBY v. UNITED STATES.

### No. 1194.

District Court, N. D. Oklahoma.

Nov. 7, 1931.

Arthur B. Honnold and Jay W. Whitney, both of Tulsa, Okl., for plaintiff.

Jno. M. Goldesberry, U. S. Dist. Atty., of Tulsa, Okl., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and A. J.

Ward, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for the United States.

KENNAMER, District Judge.

This action was instituted February 18, 1930, for the recovery of federal income taxes collected for the year 1918. Plaintiff is enrolled as a member of the Creek Tribe of Indians of one-sixteenth Indian blood, and held title during the year 1918 to the lands described in her petition, which had been theretofore allotted to her from the tribal lands as her surplus allotment. The tax sought to be recovered was assessed upon income derived by plaintiff from this allotment. During the year 1918 and at the times of the payment of the tax in March and June, 1919, plaintiff was a minor, subject to the jurisdiction of the county court of Tulsa county, Okl., and having a guardian appointed by said court. The payment of the tax was made by her guardian at the times aforesaid. Plaintiff arrived at her majority on August 12, 1920, and December 12, 1929, filed claim for refund on her taxes, alleging that income from the surplus allotment during her minority was not subject to taxation because of the Act of Congress of May 27, 1908, 35 Stat. 312. The claim for refund was rejected by the Commissioner of Internal Revenue and this suit was brought.

The defendant has demurred to plaintiff's petition, the demurrer consisting of a general demurrer and also that the petition disclosed that neither the claim for refund nor this suit were filed within the time required by law.

The first and decisive question to be decided is: "Was the income derived by plaintiff from her surplus allotment during her minority subject to taxation by the Government?" If this be decided in the affirmative, the demurrer should be sustained without further consideration. In deciding this question it is necessary to construe certain provisions of the Act of Congress of May 27, 1908, 35 Stat. 312, which is entitled, "An Act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes," and the purpose of which was to revise and restate the law as to restrictions on alienation and administration of the allotted lands of the Five Civilized Tribes. The following provisions of said act are here involved:·

"Section 1. That from and after sixty days from the date of this Act the status of the lands alloted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations * * * as he may prescribe.

"Sec. 2. * * * That the * * * term minor or minors, as used in this Act, shall include all males under the age of twenty-one years and all females under the age of eighteen years."

"Sec. 4. That all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes. * * * *"

"Sec. 6. That the person and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the State of Oklahoma. The Secretary of the Interior is hereby empowered, under rules and regulations to be prescribed by him, to appoint such local representatives within the State of Oklahoma * * * to inquire into and investigate the conduct of guardians or curators having in charge the estates of such minors, and whenever such representative or representatives of the Secretary of the Interior shall be of opinion that the estate of any minor is not being properly cared for by the guardian or curator, or that the same is in any manner being dissipated or wasted or being permitted to deteriorate in value by reason of the negligence or carelessness or incompetency of the guardian or curator, said representative or

representatives of the Secretary of the Interior shall have power and it shall be their duty to report said matter in full to the proper probate court and take the necessary steps to have such matter fully investigated, and go to the further extent of prosecuting any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interests of said minor allottees; and it shall be the further duty of such representative or representatives to make full and complete reports to the Secretary of the Interior. * * * "

It is the above-quoted provisions of section 6 of this act upon which the plaintiff relies for her contention that the income from her surplus allotment is not taxable by the government, it being the plaintiff's theory that said section 6 expressly continues the guardianship of the federal government over her entire estate and imposes restrictions upon the alienation of the estate, including the surplus allotment, to such an extent as that it cannot be classified as "land from which restrictions have been or shall be removed" as contemplated by the provisions of section 4, supra, so as to be subject to taxation. It will be noted that section 1 provides that "all lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions," and that section 4 provides, as heretofore said, "that all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes. * * * " The language of section 1 and section 4 is so plain that it is clearly apparent that plaintiff is correct in her statement that if her surplus allotment is nontaxable something must be found in section 6 to support such contention. Plaintiff contends that because of the presence of section 6 in the act of 1908, supra, it was not intended by the act to emancipate plaintiff as a ward of the government until she had attained her majority. It is contended that the provisions of this section, reciting that the person and property of minor allottees shall be subject to the jurisdiction of the probate courts of the state of Oklahoma, and empowering the Secretary of the Interior to appoint local representatives within the state of Oklahoma to inquire into and investigate the conduct of guardians or curator having charge of the estates of such minors, and authorizing such representatives,

when necessary, to report any dereliction of duty of any such guardian or curator to the probate court and take such steps as may be necessary to have such matter fully investigated and to prosecute any necessary remedy, either civil or criminal, to preserve the property and protect the interest of minor allottees, are in effect a continuation of the guardianship of the national government over such minor allottees, and that the restrictions from their allotments have not been wholly removed. It is plaintiff's position that that part of section 6 providing that the person and property of minors shall be subject to the jurisdiction of the probate courts of Oklahoma constitute such courts agencies of the federal government. The power exercised by such courts over such minor estates is a jurisdiction vested in them by the national government.

█ I cannot agree that this is the proper construction of the Act of May 27, 1908, 35 Stats. 312, supra, and particularly section 6 thereof. By section 1 of the act Congress in definite and plain language removed all restrictions upon alienation of the allotments of certain members of the Five Civilized Tribes, including minors having less than half Indian blood. The act did not confer any jurisdiction upon the county courts of Oklahoma in the exercise of their probate jurisdiction, but the Congress by the act relinquished its superior and paramount jurisdiction and control over the allotments made to members of the tribe of less than half Indian blood, and when this paramount power and control over such lands were relinquished by Congress, the land and property of such members of the tribe located within the state became subject to the laws of the state and the jurisdiction of its courts. While Congress may constitute the county courts federal agencies to perform ministerial duties with reference to Indians and their property located within the state, it will not be assumed that Congress has attempted to confer probate jurisdiction upon the courts of the state. The jurisdiction of such courts is conferred under the Constitution and laws of the state. The county courts in the exercise of probate jurisdiction proceed under the jurisdiction conferred by the Constitution and laws of the state. Where the Congress has relinquished its superior power over Indians and their property located within a state, such Indians and their property are subject to the laws of the state and the jurisdiction of its courts. Dickson v. Luck Land Co., 242 U. S. 371, 37 S. Ct. 167, 61 L.

Ed. 371; Goudy v. Meath, 203 U. S. 146, 27 S. Ct. 48, 51 L. Ed. 130; In re Estate of Pigeon, 81 Okl. 180, 198 P. 309.

The powers vested in the Secretary of the Interior under the provisions of section 6 to appoint local representatives within the state, and who are commonly designated as probate attorneys, to inquire into and investigate the conduct of guardians for the purpose of prosecuting any civil or criminal remedies in behalf of such Indian minors, in no way qualifies the provisions of section 1 of said act removing restrictions from the allotments of such Indian minors. The same right may be exercised by the next friend of such minor, and it would appear that it was only intended that the Secretary should provide for a representative to protect the rights of such minors by invoking proper civil and criminal remedies in their behalf. By the provisions of section 2 of the act the term "minor" or "minors," as used in this act, shall include all males under the age of 21 years and all females under the age of 18 years. By this section Congress only exercised its paramount power in qualifying the laws of the state that would become operative and applicable to such minor allottees. Under the laws of the state marriage of a minor had the effect of removing minority, and the courts of the state might remove the disability of minority. No doubt it was the intention of the Congress to so qualify the operation and effect of the laws of the state as to not make them applicable to such Indians. It prescribed a limitation as to the time the disability or minority should continue, which could not be affected by the law of the state. Jefferson v. Winkler, 26 Okl. 653, 110 P. 755; Rogers v. Rogers (D. C.) 263 F. 160; McNee v. Whitehead (C. C. A.) 253 F. 546.

Section 4 of the act approved May 27, 1908, supra, provides: "Land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes." And the proviso to section 4 prohibits allotted lands from being subjected or held liable to any form of personal claim or demand against the allottee arising or existing prior to removal or restrictions other than contracts theretofore expressly permitted by (federal) law. It is apparent that the proviso designates the civil burdens to which such lands shall not be subjected, and it appears reasonable that such civil burdens as are not included within the exceptions found in the proviso cannot be included therein by interpretation.

It is my conclusion that the income derived from the surplus allotment of the plaintiff was subject to the income taxes collected for the year 1918. The demurrer should be sustained. The plaintiff having indicated that she desires to stand upon the petition as filed, without leave to plead further, the action may be dismissed at the cost of the plaintiff.