MAGILL, Circuit Judge,
concurring in part and dissenting in part.
I concur in section III of the majority opinion to the extent that it affirms the district court’s conclusion that the allotted lands in this case were properly taxed by Cass County. I respectfully dissent from the remainder of the majority’s decision.
In 1993 Cass County, Minnesota, (County) began imposing ad valorem taxation on lands held in fee simple by the Leech Lake Band of Chippewa (Band), a federally recognized Indian tribe, on the Leech Lake Reservation.[14] The Band brought this action in the district court seeking injunctive relief from future taxation by the County and a judgment for the $64,000 in taxes which it has paid, under protest, to the County. Relying on County of Yakima v. Yakima Indian Nation, 502 U.S. 251, 112 S.Ct. 683, 116 L.Ed.2d 687 (1992), the district court held that the taxation had been proper, and granted summary judgment to the County. I would affirm.
In Goudy v. Meath, 203 U.S. 146, 27 S.Ct. 48, 51 L.Ed. 130 (1906), the United States Supreme Court held that alienable lands held by a member of the Puyallup Tribe were subject to state taxation. The Court reasoned:
That Congress may grant the power of voluntary sale, while withholding the land from taxation or forced alienation, may be conceded.... But while Congress may make such provision, its intent to do so should be clearly manifested, for the purpose of the restriction upon voluntary alienation is protection of the Indian from the cunning and rapacity of his white neighbors, and it would seem strange, to withdraw the protection [of the restriction on alienation] and permit the Indian to dispose of his lands as he please, while at the same time releasing it from taxation.... Among the laws to which the plaintiff as a citizen became subject were those in respect to taxation. His property, unless exempt, became subject to taxation in the same manner as property belonging to other citizens, and the rule of exemption for him must be the same as for other citizens — that is, that no exemption exists by implication but must be clearly manifested.
Id. at 149, 27 S.Ct. at 50. Relying on this reasoning, the United States Supreme Court in Yakima County held that lands originally allotted to Yakima Indians pursuant to the General Allotment Act of 1887, also known as the Dawes Act, ch. 119,-24 Stat. 388, codified in part as amended at 25 U.S.C. § 331, and which were subsequently held by individual Indians and the tribe in fee simple were subject to county ad valorem taxation. The Yakima County Court specifically held that
when § 5 [of the General Allotment Act] rendered the allotted lands alienable and encumberable, it also rendered them subject to assessment and forced sale for taxes.
502 U.S. at 263-64, 112 S.Ct. at 691.
In Lummi Indian Tribe v. Whatcom County, Wash., 5 F.3d 1355 (9th Cir.1993), cert. denied, 512 U.S. 1228, 114 S.Ct. 2727, *831 129 L.Ed.2d 850 (1994), the Ninth Circuit accepted this clear pronouncement by the Supreme Court that alienability of land allowed taxation of the land, and held that:
The logic propounded by the Goudy Court and approved by Yakima Nation requires an Indian, even though he receives his property by treaty, to accept the burden as well as the benefits of land ownership. This proposition may be hard to square with the requirement, recently approved by the Yakima Nation Court, that Congress’ intent to authorize state taxation of Indians must be unmistakably clear. The strength of the language in Yakima Nation, however, makes virtually inescapable the conclusion that the Lummi land is taxable if it is alienable.
Id. at 1358 (allowing county taxation of alienable land held by tribe). But see United States on Behalf of Saginaw Chippewa Tribe v. Michigan, 106 F.3d 130 (6th Cir.1997) (rejecting Lummi court’s interpretation of Yakima County and holding that alienability does not necessarily allow taxation).
Bather than accept the clear rule propounded by the Yakima County Court that alienability allows taxation, the majority declares that the homestead lands and pine lands in this case are exempt from taxation, and engages in a strained analysis of the Yakima County decision that eviscerates its holding. For example, because the Yakima County Court supported its conclusion that the land in question was taxable by noting that “[t]he Burke Act proviso, enacted in 1906, made this implication of § 5 explicit, and its nature more clear,” 502 U.S. at 264, 112 S.Ct. at 691, the majority concludes that the Burke Act analysis was necessary to the Yakima County Court’s conclusion.[15] See Maj. Op. at 826-27. The majority insists that § 5’s grant of alienability did not allow taxation, asserting that “[n]o court has taken the position that an implication alone is sufficient to provide unmistakably clear congressional intent to allow state taxation.... ” Id. at 827. This statement simply disregards the Yakima County Court’s treatment of § 5, and is strongly reminiscent of the Yakima County dissent:
The majority concedes that § 5 only “implied” this conclusion. In my view, a “mere implication” falls far short of the “unmistakably clear” intent standard.
502 U.S. at 273, 112 S.Ct. at 696 (Blackmun, J., dissenting) (citations omitted).[16]
While I can understand the majority’s disinclination to accept Yakima County’s holding, it is nevertheless binding precedent, and should have been followed in this ease. Under the clear language of Yakima County, alienability of land allows taxation of land. Because all of the lands in this case are fully alienable by the Band,[17] the district court *832 properly followed the Supreme Court’s clear holding in Yakima County and held that the lands are subject to taxation by the County.
I agree with the majority’s conclusion in section III of its opinion that the lands originally allotted to- Indians are taxable by the County. I disagree, however, with its conclusion that the pine lands and homestead parcel are not. Accordingly, I would affirm the district court’s judgment in its entirety.

. This case involves twenty-one parcels of land which were originally held in common by the Band under aboriginal title and which were subsequently held in trust by the United States. In 1889 Congress enacted the Nelson Act, ch. 24, 25 Stat. 642, which allotted land held in common by the Band to individual Indians. Thirteen of the parcels in this case were so allotted and eventually became alienable. The Nelson Act also disposed of surplus lands, including lumbering lands (pine lands) and homesteads, to non-Indians. Seven of the parcels were originally sold as pine lands, and the remaining parcel was originally sold as a homestead. The twenty-one parcels were reacquired by the Band after 1980. Some of the land is undeveloped, while there are tribal facilities on other parcels. Although the Band successfully converted other reacquired lands — including a casino — to trust status, see Summ. J. Tr. at 9; see also 25 U.S.C. § 465 (statutory procedure for placing lands in trust with the United States), the title to the twenty-one parcels at issue in this case are held by the Band in fee simple.

. It is clear that the Yakima County Court's analysis of the Burke Act was nothing more than additional support for its holding that alienability resulted in taxability. As the Court stated:
[T]he [Burke Act] proviso reaffirmed for such "prematurely” patented land what § 5 of the General Allotment Act implied with respect to patented land generally: subjection to state real estate taxes.
Yakima County, 502 U.S. at 264, 112 S.Ct. at 691 (emphasis added). I note that, as a matter of plain logic, a "reaffirmation” supports, rather than controls, a conclusion. In addition, rather than being limited by the Burke Act’s provision for the taxation of only prematurely patented land, the Yakima County Court allowed taxation over all land allotted under the General Allotment Act. See id. at 270, 112 S.Ct. at 694.

. In reaching its decision to disregard Yakima County's clear holding, the majority also relies on the Yakima County Court's remand for a factual determination of "whether the parcels at issue in these cases were patented under the General Allotment Act, .rather than under some other statutes in force prior to the Indian Reorganization Act,” and the legal determination of “whether it makes any difference." 502 U.S. at 270, 112 S.Ct. at 694. I suggest that this remand was either an effort to avoid creating needless dicta, or a reference to the unusual situation noted in Goudy, where Congress could explicitly exempt land from taxation, despite making it alienable. See Goudy, 203 U.S. at 149, 27 S.Ct. at 50. In any event, I do not believe that the remand, particularly considering the phrasing of “whether it makes any difference,” can override the clear statement that a statute making land alienable also makes it taxable.

. Before both the district court and this appellate panel, the Band argued that the Nonin-tercourse Act, 25 U.S.C. § 177, limited the alienability of all lands held by an Indian tribe, including recently acquired lands held in fee simple. The district court rejected this argument, see Order at 14, as have most courts which have considered it. See, e.g., Lummi In *832 dian Tribe v. Whatcom County, Wash., 5 F.3d 1355, 1359 (9th Cir.1993) (“No court has held that Indian land approved for alienation by the federal government and then reacquired by a tribe again becomes inalienable. To the contrary, courts have said that once Congress removes restraints on alienation of land, the protections of the Nonintercourse Act no longer apply. Moreover, the statutory authorization for the sale of Indian land following proper government approval makes no mention of reimposing restrictions should a tribe reacquire the land. Rather, the broad statutory language suggests that, once sold, the land becomes forever alienable.” (citations omitted)), cert. denied, 512 U.S. 1228, 114 S.Ct. 2727, 129 L.Ed.2d 850 (1994). The majority has declined to consider this issue. See Maj. Op. at 826 n. 8.