RALPH B. CLY, JR., Circuit Judge,
dissenting.
The court has accurately set forth the tacts and procedural history of this case. The result reached is certainly plausible. Nonetheless, I believe the approach taken by the Ninth Circuit in Lummi Indian Tribe v. Whatcom County, Washington, 5 F.3d 1355 (9th Cir.1993), is the better one. In Lummi the court held:
A state cannot tax reservation lands or reservation Indians unless Congress has “made its intention to (authorize state taxation] unmistakably clear.” [County of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation, 502 U.S. 251, 258, 112 S.Ct. 683, 116 L.Ed.2d 687 (1992)1, 112 S.Ct. at 688 (quoting Montana v. Blackfeet Tribe, 471 U.S. 759, 765, 105 S.Ct. 2399, 2402, 85 L.Ed.Üd 753 (1985)). In Yuki- *534 ma .Nation, the Court found an unmistakably clear intent to tax fee-patented land. It did not rely on section 6 of the General Allotment Act as Yakima County proposed, concluding instead that the land’s alienable status determines its taxability. See [Yakima ] at [257-265], 112 S.Ct. at 688-691. The Court, made no distinction between fee land allotted by treaty and that allotted under the Act. Its interpretation of section 5 of the Act and the proviso to section 6 imply that no matter how the land became patented, it is taxable once restraints against alienation expire.
Id. at 1357 (first alteration in original) (footnote omitted).
The court went on to say:
The logic propounded by the Goudy Court [Goudy v. Meath, 203 U.S. 146, 27 S.Ct. 48, 51 L.Ed. 130 (1906) ] and approved by Yakima Nation requires an Indian, even though he receives his property by treaty, to accept the burdens as well as the benefits of land ownership. This proposition may be hard to square with the requirement, recently approved by the Yakima Nation Court, that Congress’ intent to authorize state taxation of Indians must be unmistakably clear. The strength of the language in Yakima Nation, however, makes virtually inescapable the conclusion that the Lummi land is taxable if it is alienable.
Id. at 1358.
There was a dissent in Lummi and the dissenting judge stated: “There is an appealing simplicity to the proposition that alienable land is taxable land. Unfortunately, federal Indian law does not have a simple history; no amount of wishing will give it a simple future.” Id. at 1360. I have no quarrel with this observation, but I cannot find in the Treaty anything from which I can reasonably conclude that once this land became freely alienable, it should escape taxation. Without meaning to demean in any way the credentials of the experts who testified, I do not believe that any expert can tell you what was in the mind of an Indian 150 years ago relative to losing his land through forfeiture for nonpayment of taxes, when the tribe knew nothing of taxation and the consequences that might flow from failure to pay taxes that were assessed. I do not find the treaty language ambiguous. For me it is clear that, in a historical context, what was referenced when “removal” was mentioned was relocation of the tribe, and it had nothing to do with what might happen when freely alienable land was under individual ownership.