## UNITED STATES v. MUMMERT et al.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1926.)

No. 7303.

Taxation ☞181—Land previously subject to taxation remains so when bought for noncompetent Indians with restricted trust fund, notwithstanding deed's restriction on alienation.

Land previously patented in fee simple can be taxed when purchased by Indians with consent of Secretary of Interior, with proceeds of restricted land held by the government for the use of said Indians, though deed contains restriction against alienation except with consent of Secretary of Interior.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit by the United States, as trustee and guardian for Emily Walker Blackbird and others, against David Z. Mummert and others. From the decree of dismissal, the United States appeals. Affirmed.

Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb. (James C. Kinsler, U. S. Atty., and Andrew C. Scott and George A. Keyser, Asst. U. S. Attys., all of Omaha, Neb., on the brief), for the United States.

Archie M. Smith, of Omaha, Neb., and Cecil R. Boughn, of Pender, Neb., for appellees.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and SANBORN, District Judge.

VAN VALKENBURGH, Circuit Judge. Appellant, through its district attorney, filed against defendants its bill of complaint, the material allegations of which follow:

"That Emily Walker Blackbird, John Blackbird, Mary Hewitt Sheridan, Eli Sheridan, Frank Sheridan, Fred Sheridan, Dave Sheridan, Elwood Harlan, Margaret Freemont Harlan, Willie Harlan, Harrison Harlan, Herman Harlan, Joseph Harlan, and Norman Harlan are all members of the Omaha Tribe of Indians, residing in Thurston county, Nebraska, and are all incompetent Indians and wards of the complainant, United States of America. That the said Frank Sheridan, Fred Sheridan, and Dave Sheridan are minor children of said Mary Hewitt Sheridan and said Eli Sheridan. That said Willie Harlan, Harrison Harlan, Herman Harlan, Joseph Harlan, and Norman Harlan are minor children of said Elwood Harlan and said Margaret Freemont Harlan.

"That on or about the 27th day of September, 1917, the complainant, United States of America, held certain restricted funds in trust for said Emily Walker Blackbird; that said trust funds were derived from the sale of the interest of said Emily Walker Blackbird in certain restricted Indian lands, namely, her share of the Edwin Walker, Omaha Indian allotment No. 363-0, and were not subject to taxation by the defendant, county of Thurston. That on or about the 28th day of September, 1917, in order that said Emily Walker Blackbird and her husband, said John Blackbird, might be provided with a necessary and appropriate home for their maintenance, shelter, and support, complainant authorized and allowed $900 of said restricted funds of said Emily Walker Blackbird to be used in the purchase of such a home, namely, lot 3, block 16, third filing, in the village of Walthill, Thurston county, Nebraska, and said necessary and appropriate home was purchased with said restricted funds of the said Emily Walker Blackbird from A. P. Coleman and wife on said 28th day of September, 1917, and conveyed to said Emily Walker Blackbird, by her name of Emily Walker, 'subject to the condition that, while the title is in the grantee or heirs, no deed, mortgage, power of attorney, contract to sell, lease, or other instrument affecting the land herein described or the title thereto, shall be of any force or effect or capable of confirmation or ratification unless approved by the Secretary of the Interior.' That a copy of said deed is hereto attached, marked Exhibit A, and made part of this petition for equitable relief. That said real estate, purchased with said restricted trust funds of said Emily Walker Blackbird as above set forth, is now, and has at all times since its purchase been, occupied by said Emily Walker Blackbird and her said husband, John Blackbird, as a home.

"That prior to the 1st day of January, 1918, the complainant held in its possession certain restricted trust funds for said Mary Hewitt Sheridan and said Eli Sheridan, said restricted trust funds being the proceeds of the sale of certain restricted Indian lands belonging to said Mary Hewitt Sheridan and said Eli Sheridan and located in said Omaha Indian reservation; that the complainant, in order that said Mary Hewitt Sheridan and her said husband, Eli Sheridan, and the minor children, Frank Sheridan, Fred Sheridan, and Dave Sheridan, might be provided with a necessary and appropriate home for the maintenance, education, shelter, and support of said Sheridan family, authorized and allowed part of said restricted trust funds to be

used in the purchase of such a home, namely, lot 1, block 28, of the fourth filing in the village of Walthill, Thurston county, Nebraska, and said necessary and appropriate home was purchaser with said restricted trust funds of said Mary Hewitt Sheridan and said Eli Sheridan, and afterwards conveyed by them to their said minor children, Frank Sheridan, Fred Sheridan, and Dave Sheridan, the said Mary Hewitt Sheridan and Eli Sheridan retaining the use of said premises during their lifetime free of rent. And said premises, purchased as above set forth with the restricted trust funds of said Mary Hewitt Sheridan and said Eli Sheridan, have been occupied by them and their said children as a home since the date of said purchase as set forth.

"That on and prior to the 1st day of October, 1917, the complainant held in its possession certain restricted trust funds belonging to said Elwood Harlan and Margaret Freemont Harlan; that said restricted trust funds were the proceeds of the sale of certain restricted Indian lands of said Elwood Harlan and Margaret Freemont Harlan; that on or about said 1st day of October, 1917, in order to provide a necessary and appropriate home for the maintenance, shelter, education, and support of said Elwood Harlan and his said wife and children, the complainant authorized $9,000 of said restricted trust funds to be used in the purchase of such a home for said Elwood Harlan and his said family. That $5,000 of said restricted trust funds were used in the purchase of the southwest quarter of the southwest quarter of section 16 in township 25 north, of range 9 east of the sixth principal meridian, in Thurston county, Nebraska, 'subject to the conditions that, while the title is in the grantees or their heirs, no deed, mortgage, power of attorney, contract to sell, lease, or other instrument affecting the land herein described, or the title thereto, shall be of any force or effect, or capable of confirmation or ratification, unless approved by the Secretary of the Interior, and also subject to the right which is hereby reserved to Elwood Harlan and Margaret Freemont Harlan to use and occupy said land during the terms of their natural lives, without rental charge, but they are to pay all taxes.' That said premises were conveyed to said minor children of said Elwood Harlan by deed duly executed by John F. Farley and Nellie G. Farley, husband and wife. That a copy of said deed, marked Exhibit B, is hereto attached and made part of this petition for equitable relief.

"That the remaining $4,000 of said restricted trust funds were used to purchase an adjoining 40 acres, described as the northwest quarter of the southwest quarter of section 16 in township 25 north, of range 9 east of the sixth principal meridian in Thurston county, Nebraska, containing 40 acres, more or less, according to government survey. That said 40 acres was taken in the name of said Willie Harlan, one of the minor children of said Elwood Harlan, and subject to the same conditions and restrictions as applied to the 40 acres last above described. That said premises were conveyed to said Willie Harlan by John F. Farley and Nellie G. Farley, husband and wife, and that a copy of their deed is hereto attached, marked Exhibit C, and made part of this petition for equitable relief.

"That all of said 80 acres of land, purchased as above set forth with restricted trust funds belonging to said Elwood Harlan and Margaret Freemont Harlan, have been occupied by said Elwood Harlan and his said wife and children from the date of said purchase."

It was further alleged that all the above described premises, since the purchase thereof with restricted trust funds, have been, and now are, exempt from taxation by the defendant county of Thurston, or by the state of Nebraska, or by any school district in which said premises may be located; that the county of Thurston has nevertheless pretended to levy taxes on all of said lands for the years 1918 to 1924, inclusive, and has pretended to sell all of said lands to the defendant Mummert for said pretended taxes for the year 1918, and has undertaken to collect such taxes for all succeeding years; that defendant Mummert has filed an action in the district court of Thurston county to foreclose such alleged tax liens. The complainant prays that all such taxes may be declared void, that the county of Thurston may be enjoined from further levy or assessment on said lands, and that the defendant Mummert may be enjoined from prosecuting his said action in the district court of Thurston county, Neb.

To this bill of complaint defendants filed motion to dismiss. The motion was sustained by the court upon the stated ground that the bill does not state sufficient grounds for equitable relief. Plaintiff elected not to plead further and brings this appeal.

The decisive question involved is thus stated by appellees:

"Is it legal for the state of Nebraska and its political subdivisions to levy general taxes upon real estate previously patented in fee simple and taxed, which have been purchased by noncompetent Omaha Indians, wards of the federal government, with the consent of

the Secretary of the Interior, with the proceeds of restricted lands held by the government for the use and benefit of said Indians, even though the conveyance contains a restriction against alienation except with the consent of the Secretary of the Interior, and with no other restrictions or limitations whatsoever imposed on the title?"

The statement of appellant is not substantially different.

We premise our discussion of the point involved by some consideration of the situation presented as disclosed by the complaint. At the outset it may be observed that the deed to Mary Hewitt Sheridan and Eli Sheridan is not set out in the record, and there is no allegation in the bill that it contains restrictions against alienation and incumbrance. It is alleged that the property was purchased as a home for the maintenance, education, shelter, and support of the grantees and their children with trust funds from the sale of restricted lands belonging to them.

It is further to be observed that the deeds from John F. Farley and Nellie G. Farley to the minor children of Elwood Harlan and Margaret Freemont Harlan contain the provision that the said Elwood Harlan and Margaret Freemont Harlan, the parents, may use and occupy said lands during the terms of their natural lives without rental charge, but are to pay all taxes. Here we find express recognition that the Harlan lands remain subject to taxation.

The deed to Emily Walker, described in the bill as Emily Walker Blackbird, contains restrictions against alienation and incumbrance without the approval of the Secretary of the Interior, and is silent on the subject of taxes. While we think the state of the record, as disclosed by the pleadings and exhibits, removes both the Harlan and Sheridan tracts, especially the former, from consideration under the claim of the government, nevertheless we address ourselves to the substantive proposition presented, as decisive of the controversy with respect to all the lands involved.

All these lands were subject to state taxation before purchase for the use and benefit of the several Indian wards, as alleged in the bill. This court is committed strongly to the view that lands formerly subject to taxation are not exempted therefrom by a purchase and holding of this nature. United States v. Gray (C. C. A.) 284 F. 103; United States v. Ransom (C. C. A.) 284 F. 108; United States v. Brown (C. C. A.) 8 F.(2d) 564. The same rule is impliedly recognized in Unit-

ed States v. Law, 250 F. 218, 162 C. C. A. 354; Sunderland v. United States (C. C. A. 8) 287 F. 468.

It is true that in the Gray Case reference was made to certain conditions by which that case differs from the one at bar. The court said: "The record does not disclose the amount for which the homestead was sold, nor whether she had other lands or property nor the value thereof, nor whether the two lots were purchased for her for residence purposes by her, nor whether they are rented and occupied for commercial or other purposes, or are vacant and unimproved, nor her necessities."

In the case before us it is alleged that the lands were purchased out of restricted funds for a home and for the maintenance, education, shelter and support of the family including the children. However, in United States v. Ransom, supra, no such implied condition or distinction was stated. It is undoubtedly true that United States v. Gray and United States v. Ransom, supra, were largely bottomed upon the opinion of the Supreme Court in McCurdy v. United States, 246 U. S. 263, 38 S. Ct. 289, 62 L. Ed. 706. It is to be noted that in the McCurdy Case the Supreme Court had before it the Acts of June 28, 1906 (34 Stat. 539), and April 18, 1912 (37 Stat. 86), which dealt exclusively with the Osage Indians, and which contemplated freeing those Indians under certain conditions from governmental control. The opinion in that case recites that the trust fund with which the land was purchased had been released from governmental control prior to the purchase. Furthermore, by section 7 of the act of 1912, under which the McCurdy Case arose, it is expressly provided that "nothing herein shall be construed so as to exempt any such property from liability for taxes." In the McCurdy Case, which held the lands in question to be subject to state taxation, the cases of United States v. Thurston County (C. C. A. 8) 143 F. 287, 74 C. C. A. 425, and United States v. Rickert, 188 U. S. 432, 23 S. Ct. 478, 47 L. Ed. 532, were distinguished because, in the latter case particularly, it was sought to tax property the legal title to which was in the United States and which was held by it for the benefit of the Indians. In the case at bar the title is not in the United States, but directly in the Indians.

In the very late case of Sunderland v. United States, 266 U. S. 226, 45 S. Ct. 64, 69 L. Ed. 259, it was argued that, under the doctrine announced in McCurdy v. United States, Congress cannot authorize the Sec-

retary of the Interior to impose restrictions on released Indian lands that have passed into private ownership; but the Supreme Court in its opinion modifies the doctrine sought to be deduced from the opinion in the McCurdy Case with respect to restrictions against alienation of property purchased by way of reinvestment or otherwise with restricted trust funds, and the cases cited by appellant as to the continued trust nature of such funds into whatever form they may be converted and substituted, establish the continuance of that trust nature and the reason for it; but it is readily seen, as implied in the opinion in the Sunderland Case, that although the interposition of the strong shield of the government is justified, to the end that the Indians be not overreached or despoiled in respect of their property, this does not necessarily imply that ordinary taxation for the benefit of the government, whose protection they enjoy, is calculated to despoil the Indian in respect of his property.

The spoliation which the law aims to prevent is fraud and overreaching in the matter of alienation. There is contained in the Sunderland Case, which goes far in recognizing the retention of governmental control over, and prohibitions against alienation of, lands purchased with restricted funds, the implication that it was not intended thereby to depart from the general rule with respect to state taxation of lands that theretofore had been subject thereto, unless such intention is made clearly to appear. The court says:

"The fact that land has become subject to jurisdiction of a state and exclusively within the control of her laws does not prevent the United States from restricting for a limited time the right of a tribal Indian to alienate it, when purchased for him with funds derived from the sale of other lands originally subject to a like restriction. Such restriction not conflicting with any statute, rule of law or policy of the state, the question of supremacy of power does not arise."

And further:

"The state of Oklahoma is not concerned, since there is no state statute, rule of law, or policy, which has been called to our attention, to the contrary effect. If there were, or if the power of state taxation were involved, we should consider the question of supremacy of power; but no such question is presented by this record."

There is in this language, we think, an implied recognition of the right of state taxation under situations such as are here presented. This accords with the view entertain-

15 F.(2d)—59

ed by this court as announced in a number of cases. We think the county of Thurston, Nebraska, was not deprived of its right of taxation by the conveyances made, and that the decree below should be affirmed.

It is so ordered.