## SHAW, AUDITOR, v. GIBSON-ZAHNISER OIL CORPORATION ET AL.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 234. Argued February 29, March 1, 1928.—Decided April 9, 1928.

Land belonging to a non-Indian citizen of Oklahoma and subject to state, county and municipal taxation, was purchased October 24,

1915, under supervision of a county court and the Secretary of the Interior, for a minor, full-blood Creek Indian with moneys derived as royalties from a departmental lease of his restricted allotment. The deed, as required by the Secretary and the court, provided that the land should not be alienated or leased during the lifetime of the grantee, prior to April 26, 1931, without the consent and approval of the Secretary. The land was let for oil and gas exploitation under a departmental lease, and a tax was levied upon the leaseholders, under the state law, measured by a percentage of the gross value of oil and gas produced, less the royalty interest of the Indian owner. *Held,* in response to questions from the Circuit Court of Appeals:

1. That the Secretary of the Interior, when the land was purchased, had no power to exempt it from such taxation. P. 577.

2. The tax was not a forbidden tax upon a federal instrumentality. *Id.*

RESPONSE to questions certified by the Circuit Court of Appeals, concerning a judgment of the District Court in favor of the above-named corporation, in an action to recover money paid under protest as state taxes.

*Mr. V. P. Crowe, Assistant Attorney General of Oklahoma,* with whom *Mr. Edwin Dabney, Attorney General,* was on the brief, for Shaw, State Auditor.

*Mr. Charles B. Cochran* for Gibson-Zahniser Oil Corporation.

MR. JUSTICE STONE delivered the opinion of the Court.

Defendants in error brought this suit in the district court for western Oklahoma against plaintiff in error to recover state taxes paid under protest. Judgment was given for the plaintiff, and the case is now pending on writ of error in the court of appeals for the eighth circuit. That court has certified to this, questions of law concerning which it asks instructions for the proper decision of the cause. Jud. Code § 239.

The certificate discloses that defendants in error are the assignees of a departmental oil and gas lease of land belonging to Miller Tiger, a full blood Creek Indian. The leased land was purchased for Tiger while a minor by his guardians, with the permission of the county court of Okmulgee County, Oklahoma. The purchase price came from the accumulated royalties of a departmental lease of his restricted allotted lands. The purchase was made of a non-Indian citizen of Oklahoma and the deed, in compliance with conditions exacted by the Secretary of the Interior and the county court, provided that the land " should not be alienated or leased during the lifetime of the grantee prior to April 26, 1931, without the consent of and approval by the Secretary of the Interior." Before the purchase in 1915 the land had been subject to state, county and municipal taxation. Since then local *ad valorem* taxes on the land have been paid without objection by the United States Indian Agency. The tax now in question was levied and collected under Okla. Comp. Stats. (1921) § 9814, which imposes on those engaged in the production of oil and gas a tax equal to 3% of the gross value of the oil and gas produced " less the royalty interest." The questions certified are as follows:

1. Had the Secretary of the Interior, on October 24, 1915, when this land was purchased, power to exempt from such state taxation land purchased under his supervision for a full blood Creek Indian with trust funds of that Indian, where the land so purchased was, at that time, subject to all State taxes?

2. Is this tax a forbidden tax upon a federal instrumentality?

In *Sunderland* v. *United States*, 266 U. S. 226, a restriction against alienation like that in the present case imposed by the Secretary on lands purchased for a Creek

318°—28——37

Indian, as were Tiger's, under § 1, c. 199 of the Act of May 27, 1908, 35 Stat. 312, was held to be a valid exercise of the power of the Secretary to remove restrictions from the land of full blood Indians " wholly or in part, under such rules and regulations concerning terms of sale and disposal of proceeds for the benefit of the respective Indians as he may prescribe." In an earlier case, *McCurdy* v. *United States,* 246 U. S. 263, this Court had held that a similar restriction upon lands similarly purchased for an Osage Indian could not have the effect contended for there, and here, of exempting the land from state taxation for the reason that under the applicable provisions of a different statute, § 5, c. 83, Act of April 18, 1912, 37 Stat. 86, the Secretary was without authority to impose the restriction. And, in *United States* v. *Ransom,* 263 U. S. 691, affirming 284 Fed. 108, it was held, on the authority of *McCurdy* v. *United States, supra,* that the state had power to tax lands purchased for a Creek Indian citizen with restrictions against alienation imposed by the Secretary under § 1 of the Act of May 27, 1908, which was the statute later passed on in *Sunderland* v. *United States, supra.* The construction to be placed on these decisions is that the lands now in question, and hence the interest of the lessee in them, are not such instrumentalities of the government as will be declared immune from taxation in the absence of an express exemption by Congress and that the mere act of the Secretary in imposing the restriction is not the exercise of any power which may reside in Congress to exempt them from taxation.

What governmental instrumentalities will be held free from state taxation, though Congress has not expressly so provided, cannot be determined apart from the purpose and character of the legislation creating them. *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514. The end sought and the mode of attaining it adopted by Congress in the legislation providing for the welfare of the Indians by setting

apart, by allotment or otherwise, tribal lands or the public
domain, restricted for their benefit, led to the conclusion
that those lands and the uses of them were so intimately
connected with the performance of governmental func-
tions as clearly to require independence of all state control
so complete that nothing short of an express declaration
by Congress would have subjected them to state taxation.

Governmental agencies similarly held to be exempt are
national banks, *First National Bank of Hartford* v. *Hart-
ford,* 273 U. S. 548; bonds of the national government,
*Weston* v. *City Council of Charleston,* 2 Pet. 449, 467;
such were and still are the restricted allotted or tribal
lands of the Indians: neither leases of those lands, *Indian
Territory Illuminating Oil Co.* v. *Oklahoma,* 240 U. S.
522, nor the exploitation of the land by the lessee, *Howard*
v. *Gypsy Oil Co.,* 247 U. S. 503; *Large Oil Co.* v. *Kansas,*
248 U. S. 549; *Choctaw & Gulf R. R.* v. *Harrison,* 235
U. S. 292; *Jaybird Mining Co.* v. *Weir,* 271 U. S. 609, nor
his income from the lease, *Gillespie* v. *Oklahoma,* 257 U. S.
501, may be taxed by the state.

The early legislation affecting the Indians had as its
immediate object the closest control by the government
of their lives and property. The first and principal need
then was that they should be shielded alike from their
own improvidence and the spoliation of others but the
ultimate purpose was to give them the more independent
and responsible status of citizens and property owners.
The present statute which enabled Miller Tiger to become
the owner of the lands leased to the plaintiff is typical
of the latter course of Indian legislation, which discloses
a purpose to accomplish that end not only by the gradual
relinquishment of restrictions upon the lands originally
allotted to the Indians but by encouraging their acquisi-
tion of other property and gradually enlarging their con-
trol over it until independence should be achieved. See
*McCurdy* v. *United States, supra.*

The act under which Tiger's allotted land was leased
is entitled "An Act for the removal of restrictions from
part of the lands of allottees of the Five Civilized Tribes,
and for other purposes." It frees from all restriction the
lands of all allottees, of less than three-quarters Indian
blood. Section 1 empowers the Secretary of the Interior
to remove the restrictions from the lands of full-blood
Indians " wholly or in part, under such rules and regu-
lations concerning terms of sale and disposal of the pro-
ceeds for the benefit of the respective Indians as he may
prescribe." Section 2 permits the allottees of lands from
which restrictions have not been removed to lease them
for a period of five years, " Provided, that leases of re-
stricted lands for oil, gas or other mining purposes,
. . . may be made with the approval of the Secretary
of the Interior, under rules and regulations provided by
the Secretary of the Interior, and not otherwise." Under
§ 4 "all land from which restrictions have been or shall be
removed shall be subject to taxation and all other civil
burdens as though it were the property of other persons
than allottees of the Five Civilized Tribes." In this
as in other Indian legislation, opportunity is afforded for
their emancipation by imposing upon them duties as
well as giving them the privileges of citizens and property
owners, including the duty to pay taxes.

In a broad sense all lands which the Indians are per-
mitted to purchase out of the taxable lands of the state
in this process of their emancipation and assumption of
the responsibility of citizenship, whether restricted or not,
may be said to be instrumentalities in that process. But
they are far less intimately connected with the perform-
ance of an essential governmental function than were
the restricted allotted lands, and the accomplishment of
their purpose obviously does not require entire inde-
pendence of state control in matters of taxation. To hold
them immune would be inconsistent with one of the very

purposes of their creation, to educate the Indians in responsibility, and would present the curious paradox that the Secretary by a mere conveyancer's restriction, permitted by Congress, had rendered the land free from taxation and thus actually relieved the Indians of all responsibility. There are some instrumentalities which, though Congress may protect them from state taxation, will nevertheless be subject to that taxation unless Congress speaks. See *Goudy* v. *Meath,* 203 U. S. 146, 149; *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362, 371; *Fidelty & Deposit Co.* v. *Pennsylvania,* 240 U. S. 319, 323; *Railroad Co.* v. *Peniston,* 18 Wall. 5; *Choctaw O. & G. R. R.* v. *Mackey,* 256 U. S. 531, 537; *Central Pac. R. R.* v. *California,* 162 U. S. 91, 126. These lands we take to be of that character.

Little need be said as to the power of the Secretary of the Interior to exempt the land and its uses from taxation. The power, if it exists, is one conferred by Congress, but neither it nor the Secretary has in terms purported to make or authorize such an exemption.

The Act of May 27, 1908, contains no express exemption from taxation of the proceeds of restricted lands, but § 4 expressly subjects lands from which restrictions have been removed to state taxation. This section was adopted in response to representations that the revenue of the state of Oklahoma was insufficient for state purposes, that large areas of lands within the state allotted to Indians were exempt from taxation as agencies of the federal government and that Indian citizens were enjoying the benefit of local government without taxation. Report of the Senate Committee on Indian Affairs, S. Rep. No. 575, 60th Cong., 1st Sess.; Report of the House Committee on Indian Affairs, H. Rep. No. 1454, 60th Cong., 1st Sess.

At the time of this legislation restrictions on some allotted lands had been removed by reason of the expira-

tion of the restricted period. There were also allotments on behalf of allottees dying before allotment which in the hands of their heirs were unrestricted. See *Tiger* v. *Western Investment Co.*, 221 U. S. 286. It cannot be assumed that Congress at a time when it was withdrawing allotted lands from their former exemption in order that Indian citizens might assume the just burdens of state taxation, intended to extend a tax exemption by implication. In any case the Secretary of the Interior has never, by rule or regulation or other action, purported to exempt such lands from state taxation. No such action is to be implied from his authorized action in restricting the power of the Indian grantee to alienate the land. See *United States* v. *Ransom, supra;* *United States* v. *Brown,* 8 F. (2d) 564; *United States* v. *Gray,* 284 Fed. 103; *United States* v. *Mummert,* 15 F. (2d) 926.

> *Question 1: Answered No.*
> *Question 2: Answered No.*