SUPERINTENDENT, FIVE CIVILIZED TRIBES, FOR SANDY FOX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66375. Promulgated December 26, 1933.

*Thomas J. Reilly, Esq.,* for the petitioner.
*B. M. Coon, Esq.,* for the respondent.

OPINION.

BLACK: This proceeding is for the redetermination of a deficiency in income tax for the calendar year 1929 in the amount of $167. The amended petition alleges that the amount of taxes in controversy is $269.59, which amount includes the original assessment of $102.59, and assigns two errors, as follows:

(a) The Commissioner erred in including as income for the year 1929 an amount of $3,117.50 received as interest on a refund of income tax during the year 1929.

(b) The Commissioner erred in exacting any taxes from this petitioner for the year 1929.

The facts were stipulated as follows:

Petitioner is a full-blood restricted Creek Indian, being enrolled opposite Creek Roll No. NB 1263.

His property, both real and personal, is restricted and under the direct supervision of the Superintendent of the Five Civilized Tribes, and under the direction and supervision of the Secretary of the Interior.

The income from petitioner's allotment is received and held in trust by the said Superintendent and invested by him under the direction of the Secretary of the Interior. The income interest from such investments is likewise received and held in trust as part of petitioner's restricted funds and property.

For the calendar year 1929 the Superintendent filed for petitioner an income tax return and the said Superintendent paid the tax shown thereon to be due for restricted funds of petitioner in his possession.

Included in petitioner's tax return for 1929 was an amount of $7,797.42 received by said Superintendent upon petitioner's restricted funds. There was also included in said return an item of $8,351.75 received by the said Superintendent as interest on Liberty Bonds held by him as part of petitioner's restricted funds. Neither of these sums were subject to petitioner's demand.

During the year 1929, the Commissioner of Internal Revenue under authority of Treasury Decision 3570 refunded to said Superintendent for petitioner the following taxes which had been paid by the Superintendent as follows:

| Year | Tax | Interest |
|------|-----|----------|
| 1914 | $95.43 | $79.15 |
| 1915 | 858.24 | 637.60 |
| 1916 | 3,396.31 | 2,400.75 |
| Total | $4,349.98 | $3,117.50 |

There was also refunded during 1929 interest computed according to law on said refunds in the amount of $3,117.50, said interest being paid to the said Superintendent for petitioner. This interest is part of petitioner's restricted funds and is not subject to his demand.

That the interest set forth in the paragraph just above has never been returned for income tax purposes by said Superintendent or petitioner.

The net income of petitioner as determined by respondent is shown in the statement attached to the deficiency notice as follows:

The records of this office disclose that you received $3,117.50 in the form of interest on a refund of income tax during the year 1929. Interest paid on such refund is taxable income for the year in which received. Inasmuch as this office is unable to identify this item in your return, the amount has been included resulting in a deficiency of $167.00.

Net income reported on return _____ $16,149.17
Add:
    Interest _____ 3,117.50

Adjusted net income _____ $19,266.67
Less:
    Interest on Liberty Bonds _____ $8,351.75
    Personal exemption _____ 3,500.00
    Credit for dependents _____ 400.00
                                                      12,251.75

Balance subject to normal tax _____ $7,014.92

The relationship between the Government and the "restricted" Indian is that of guardian and ward. *Tiger* v. *Western Investment Co.*, 221 U.S. 286, 310–317; *United States* v. *Waller*, 243 U.S. 452, 459. In the instant proceeding Sandy Fox is the ward, and the pleadings were properly filed for him by the Superintendent of the Five Civilized Tribes, who is the officer of the Interior Department directly in charge of the restricted Indians of such tribes. See sec. 143, Revenue Act of 1928; Rule 6 of the Board's Rules of Practice; and sec. 17, ch. 222, Act of August 1, 1914, 38 Stat. 582, 598.

It is contended on behalf of petitioner that he is totally exempt from the Federal income tax on all the income involved in this proceeding because of his status as a full-blood restricted Creek Indian. The case of *Mary Blackbird* v. *Commissioner*, 38 Fed. (2d) 976, is especially cited in support of that contention. Mary Blackbird was a full-blood restricted Osage without a certificate of competency. Her principal source of income was from bonuses and royalties on tribal mineral leases. She also received a small amount as surface rental, a few dollars from miscellaneous sources, and $100 each year as interest on funds held in trust for her by the United States. In holding her not subject to the income tax statute the Tenth Circuit said, in part:

She is a restricted full-blood Osage. Her property is under the supervising control of the United States. She is its ward, and we cannot agree that because the income statute, Act of 1918 (40 Stat. 1057), and Act of 1921 (42 Stat. 227), subjects "the net income of every individual" to the tax, this is alone sufficient to make the Acts applicable to her. Such holding would be contrary to the almost unbroken policy of Congress in dealing with its Indian wards and their affairs. Whenever they and their interests have been the subject affected by legislation they have been named and their interests specially dealt with. *Elk* v. *Wilkins*, 112 U. S. 94, 100, 5 S. Ct. 41, 44, 28 L. Ed. 643: "General acts of Congress did not apply to Indians, unless so expressed as to clearly manifest an intention to include them." In *Choate* v. *Trapp*, 224 U. S. 665, 32 S. Ct. 565, 56 L. Ed. 941, the court, after noting the general rule that exemptions from taxation are to be strictly construed, said at page 675 of 224 U. S., 32 S. Ct. 565, 569:

"But in the government's dealings with the Indians the rule is exactly the contrary. The construction, instead of being strict, is liberal; doubtful expressions, instead of being resolved in favor of the United States, are to be resolved in favor of a weak and defenseless people, who are wards of the nation, and dependent wholly upon its protection and good faith. This rule of construction has been recognized, without exception, for more than a hundred years, and has been applied in tax cases."

The Solicitor General of the United States did not ask for a writ of certiorari in the *Blackbird* case.

On the same day that the Tenth Circuit decided the *Blackbird* case, it also decided *Chouteau* v. *Commissioner*, 38 Fed. (2d) 976,

and held that where an Osage Indian had received his " certificate of competency " he was subject to the income tax.

The Supreme Court granted a writ of certiorari in the *Choteau* case and later affirmed the Board and the decision of the Circuit Court of Appeals. *Choteau* v. *Burnet*, 283 U. S. 691. While it is true that in the *Choteau* case the taxpayer was an Indian who had received his " certificate of competency " and in that respect was different from the instant case, where the petitioner is a restricted Indian with all the income in question having a restricted status, nevertheless, we think that the Supreme Court made it plain in the *Choteau* case that the exemption applying to the income of certain classes of Indians was not as broad as stated by the learned court of the Tenth Circuit in *Mary Blackbird* v. *Commissioner, supra*. In the *Choteau* case, the Supreme Court, among other things, said:

It is further insisted that, since the royalties are not taxable so long as they remain in the hands of the government in trust for the tribe and undistributed to members, income derived by the individual member from this fund comes from an exempt source and must therefore also be held to be exempt. * * * Royalties received by the government from mineral leases of Indian lands have been held to be beyond a state's taxing power * * * on the ground that while in the possession of the United States they are a federal instrumentality, to be used to carry out a governmental purpose. It does not follow, however, that they cannot be subjected to a federal tax. The intent to exclude must be definitely expressed, where, as here, the general language of the act laying the tax is broad enough to include the subject matter. * * * But whatever may have been the liability of the fund to federal taxation while it remained in the hands of the government, it cannot properly be said that the share of it paid as royalties to the petitioner constituted in his hands an instrumentality of the government and was therefore beyond the scope of the tax. * * * There is therefore nothing in the nature of the income which excepts it from the effect of section 213 (a) of the Revenue Act of 1918.

The real test, therefore, it seems to us, of the applicability of the Federal income tax laws to the income of Indians is whether such income or the property which produces such income is specifically exempted from taxation, either in the tax statutes or other legislation dealing particularly with Indian affairs. This was the test applied by the Tenth Circuit in the two recent cases of *Bagby* v. *United States*, 60 Fed. (2d) 80, and *Lucinda Pitman* v. *Commissioner*, 64 Fed. (2d) 740.

The court in the *Pitman* case, after considering the applicable provisions of the Act of May 27, 1908 (35 Stat. 312), concluded as follows:

We conclude, therefore, that the homestead remained restricted and exempt from taxation, and that the surplus allotment became freed of restrictions and subject to taxation from and after sixty days from May 27, 1908.

In the instant proceeding the respondent is not proposing to tax any income from petitioner's allotment. Respondent in his brief

admits that the income of a restricted Indian from restricted lands is exempt from taxation, but contends that there is no provision of law or treaty which exempts income from *income* from Federal taxation, for example, interest from a refund of Federal income tax such as exists in the instant case. In making this contention respondent is following G.C.M. 9621 (X-2 C.B. 111) in which it was held that income of a restricted Indian of the Five Civilized Tribes, including the Choctaw Tribe, from the reinvestment by the Interior Department of tax exempt income from his restricted allotted lands is taxable to the same extent as the investment income of other citizens and residents of the United States. The income which the respondent has determined in his deficiency notice to be taxable is the income received from the reinvestment of the exempt income. This identical question was before us in *R. E. Snell, Jr.*, 10 B.T.A. 1081, wherein we said in part:

> The source of the income which we are considering here is not the petitioner's homestead allotment, but is United States notes purchased and deposits made with the income from the allotment. When that income was received for the petitioners by the Superintendent of the Five Civilized Tribes, it was separated from its nontaxable source and when invested became itself a new source of income, which is not protected from taxation either by the Revenue Act of 1918 or by prior acts of Congress under which the homestead allotment was made. We are therefore of the opinion that the interest on the Government notes and bank deposits involved herein is subjected to tax under the Revenue Act of 1918.

Our decision in the *Snell* case was made prior to the decisions in the *Blackbird*, *Choteau*, *Bagby*, and *Pitman* cases, *supra*. With the exception of the *Blackbird* case, we see nothing in these cases which would require a reversal of our holding in the *Snell* case; and we regard the holding in the *Blackbird* case as having been somewhat modified by the later decisions in the *Choteau*, *Bagby*, and *Pitman* cases. Furthermore, we believe the holdings in *McCurdy* v. *United States*, 246 U. S. 263; *United States* v. *Ransom*, 263 U. S. 691; and *Shaw* v. *Gibson-Zahniser Oil Corp.*, 276 U. S. 575, all tend to support the decision made in the *Snell* case. These cases all stand for the proposition that where lands which are subject to taxation and owned by non-Indian citizens are purchased for a restricted Indian, under the supervision of the Secretary of the Interior, with moneys derived as royalties from departmental leases of the Indian's restricted allotment, the act of the Secretary in restricting such purchased lands as to alienation can not have the effect of exempting such lands from state taxation, in the absence of an express provision by Congress to that effect. In *Shaw* v. *Gibson-Zahniser Oil Corp.*, *supra*, the Supreme Court, after observing that the plan of

the Government has been gradually to emancipate the Indian from his former status as a ward, said:

\* \* \* In this as in other Indian legislation, opportunity is afforded for their emancipation by imposing upon them duties as well as giving them the privileges of citizens and property owners, including the duty to pay taxes.

In a broad sense all lands which the Indians are permitted to purchase out of taxable lands of the state in this process of their emancipation and assumption of the responsibility of citizenship, whether restricted or not, may be said to be instrumentalities in that process. But they are far less intimately connected with the performance of an essential governmental function than were the restricted allotted lands, and the accomplishment of their purpose obviously does not require entire independence of state control in matters of taxation. To hold them immune would be inconsistent with one of the very purposes of their creation, to educate the Indians in responsibility, and would present the curious paradox that the Secretary by a mere conveyancer's restriction, permitted by Congress, had rendered the land free from taxation and thus actually relieved the Indians of all responsibility. There are some instrumentalities which, though Congress may protect them from state taxation, will nevertheless be subject to that taxation unless Congress speaks. [Citations.] These lands we take to be of that character.

The principle thus announced as to lands and their taxability would appear to be just as applicable to new acquisitions of personal property and the income therefrom. See also *United States* v. *Gray*, 284 Fed. 103.

Returning now to the *Blackbird* decision, counsel for petitioner, in his brief, observes: " One of the items under consideration in the *Blackbird* case was interest on funds held in trust by the United States, the identical issue presented in this Appeal." This is, of course, literally true as to the $100 item, but the point of law involved in the *Snell* case was not discussed by the court in the *Blackbird* case, and, as we have previously indicated, it is our opinion that the *Blackbird* decision was somewhat modified by the later decisions in the *Choteau*, *Bagby*, and *Pitman* cases.

Counsel for petitioner emphasizes the fact that the income in question is held in trust by the superintendent and was not subject to petitioner's demand. This is of course true in all cases where there is a guardianship relationship. But the income itself is not exempt from taxation unless it is somewhere so provided. The respondent does not propose to subject the Liberty bond interest of $8,351.75 to the normal tax. Aside from this item of income being exempt from the normal tax, the items of income here involved are not exempt by virtue of any provision in any treaty with the Indians, the Sixteenth Amendment to the Constitution, the Revenue•Act of 1928, or any other statute of the United States. The determination of the respondent is approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*