SUPERINTENDENT FIVE CIVILIZED TRIBES, FOR SANDY FOX, CREEK NO. 1263, v. COMMISSIONER OF INTERNAL REVENUE.*

No. 1038.

Circuit Court of Appeals, Tenth Circuit.

Jan. 9, 1935.

LEWIS, Circuit Judge, dissenting.

———◆———

Thomas J. Reilly and F. M. Goodwin, both of Washington, D. C., Jay W. Whitney, of Tulsa, Okl., and Leahy, Macdonald & Files, of Pawhuska, Okl., for petitioner.

Frank J. Wideman, Asst. Atty. Gen. (Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

This petition to review a decision of the Board of Tax Appeals presents this close and difficult question: Where the guardian of a restricted Indian has invested moneys saved from the income from his ward's allotment, is the income from such investments taxable under the federal income tax law? It has been authoritatively decided that income received from his allotment, and income received by him from tribal property held in trust is not subject to income tax. Blackbird v. Commissioner (C. C. A. 10) 38 F.(2d) 976. It has been authoritatively decided that lands purchased for investment from such savings, although restricted, are subject to taxation by the state. Shaw v. Gibson-Zahniser Oil Corporation, 276 U. S. 575, 48 S. Ct. 333, 72 L. Ed. 709; United States v. Ransom (C. C. A. 8) 284 F. 108, affirmed 263 U. S. 691, 44 S. Ct. 230, 68 L. Ed. 508; United States v. Gray (C. C. A. 8) 284 F. 103; United States v. Mummert (C. C. A. 8) 15 F.(2d) 926. But whether the income from restricted property so acquired is subject to the federal tax has not been before the courts.

Sandy Fox is a full-blood restricted Creek Indian, whose property both real and personal is under the direct supervision and control of the Superintendent of the Five Civilized Tribes and the Secretary of the Interior. The income from his allotment being in excess of his needs, the surplus was invested for him by the Superintendent, and the income from such investments was held by the Superintendent in trust as part of the restricted property. In 1929 the Superintendent returned for taxation income derived from such invested savings in the sum of $16,149.17 and a tax of $102.50 thereon was assessed and paid. The Commissioner added to his return $3,117.50 interest on a tax refund received in the taxable year from the government and assessed a deficiency of $167.00. In a review be-

*Writ of certiorari granted 55 S. Ct. 650, 79 L. Ed. ——.

fore the Board of Tax Appeals, the taxpayer resisted this deficiency assessment and sought to recover the $102.50 paid. The Commissioner's ruling was in accord with a memorandum of its General Counsel, G. C. M. 9621; the Board of Tax Appeals affirmed the Commissioner in accord with an earlier decision directly in point. Snell v. Commissioner, 10 B. T. A. 1081.[1]

The interest received from the government on amounts erroneously paid in preceding years, is income received by the taxpayer during the taxable year, as were the amounts returned and on which the tax of $102.50 was paid. If this income is exempt from taxation, it must be either because of the status of the taxpayer or because of the nature of the income.

■ In Blackbird v. Commissioner (C. C. A. 10) 38 F.(2d) 976, this court held that the income[2] of a restricted Osage Indian was not within the purview of the Income Tax Statutes, and Judge Lewis cited many authorities to the point that general acts of Congress do not apply to Indian wards of the government unless an intention to include them was clearly manifested. This court at the same time held that this general rule did not apply to an Osage Indian who had been granted a certificate of competency enabling him to alienate any of his property except his homestead. Choteau (Chouteau) v. Commissioner (C. C. A. 10) 38 F.(2d) 976.

The Blackbird and Choteau Cases were decided by one opinion. The government acquiesced in the ruling in the Blackbird Case, but certiorari was granted in the Choteau Case. In its opinion in the Choteau Case, 283 U. S. 691, 51 S. Ct. 598, 600, 75 L. Ed. 1353, the Supreme Court expressly disclaimed an intent to pass upon the taxability of the income of an incompetent Indian. It affirmed the decision of this court on the ground that Choteau had

the power to alienate his surplus allotment, and that it was taxable by the state. That decision does not reach our case, for Sandy Fox could not alienate. Some of the language of that opinion may be pertinent for, without mentioning its expressions in earlier opinions, the court said:

"The language of sections 210 and 211 (a) (40 Stat. 1062) subjects the income of 'every individual' to tax. Section 213 (a) (40 Stat. 1065) includes incomes 'from any source whatever.' The intent of Congress was to levy the tax with respect to all residents of the United States and upon all sorts of income. The act does not expressly exempt the sort of income here involved, nor a person having petitioner's status respecting such income, and we are not referred to any other statute which does. * * * The intent to exclude must be definitely expressed, where, as here, the general language of the act laying the tax is broad enough to include the subject-matter."

Concerning the government's general policy toward the Indian, the court said:

"The course of legislation discloses that the plan of the government has been gradually to emancipate the Indian from his former status as a ward; to prepare him for complete independence by education and the gradual release of his property to his own individual management. This plan has included imposing upon him both the responsibilities and the privileges of the owner of property, including the duty to pay taxes."

Following the decision in the Choteau Case, this court was confronted with Pitman v. Commissioner, 64 F.(2d) 740. The taxpayer there was a full-blood Creek. The power of Creeks to alienate their allotments depends upon the quantum of blood. Act May 27, 1908 (35 Stat. 312). By section 4 of that act (page 313), unrestricted lands

---

[1] The interest received from the government is not exempt under the section exempting interest upon government bonds. Helvering v. Stockholms Enskilda Bank, 293 U. S. 84, 55 S. Ct. 50, 79 L. Ed.—.

[2] Mary Blackbird's income was more than $24,000, of which all but $30.96 was from her allotments or from minerals and funds held by the United States in trust for the members of the Osage Tribe. The $30.96 may have been income from invested savings, but this item was not considered, either in the briefs or our opinion, as differing from the other income.

The question now before us may have lurked in the record in that case, to the extent of $30.96, but receiving no consideration, the case is not controlling on the point now under consideration. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." Webster v. Fall, 266 U. S. 507, 511, 45 S. Ct. 148, 149, 69 L. Ed. 411. And, also, Satterlee v. Harris (C. C. A. 10) 60 F.(2d) 490.

were subject to taxation. Section 9 of that act (page 315) provided that the death of an allottee removed all restrictions then existing, except that full-blood Indian heirs could not convey without the consent of the probate court. Mrs. Pitman inherited from her son some lands unrestricted in his lifetime, and a restricted homestead. This court held that, notwithstanding the taxpayer was a full-blood Creek, and as such not manifestly included in the federal taxing statute, her income from unrestricted land was subject to tax while her income from the restricted land was not.

These decisions support the conclusion that a full-blood Indian is an individual embraced within the term "every individual" as used in the federal taxing statute (26 USCA §§ 2011, 2012 [a]); that such exemption from taxation as he enjoys arises, not from his blood or race, but from the nature of the property giving rise to the income. But in the cases so far considered, the property from which the taxable income was derived was unrestricted and subject to state taxation. In our case, the property giving rise to the income is restricted, as is the income itself.

We come then to the question of whether the fact that land is restricted exempts it from taxation. That question has not been answered as far as federal taxes are concerned, but it has been conclusively answered as to state taxes. Commencing with the opinion of Judge Lewis in United States v. Gray, 284 F. 103, the Eighth Circuit Court of Appeals has consistently held that where lands, previously unrestricted and subject to taxation, were purchased with proceeds of the sale of restricted land, held in trust by the United States, and where the lands purchased were restricted in the hands of the Indian, such lands were subject to state taxation. United States v. Ransom (C. C. A. 8) 284 F. 108; United States v. Mummert (C. C. A. 8) 15 F.(2d) 926.

In Shaw v. Gibson-Zahniser Oil Corporation, 276 U. S. 575, 48 S. Ct. 333, 334, 72 L. Ed. 709, the guardians of a minor full-blood Creek purchased lands with moneys of their ward which had accumulated from the income of the ward's original restricted allotment. The purchased lands were alienable only with the approval of the Secretary of the Interior. An oil and gas lease was executed. The state undertook to impose its gross production tax on the oil produced. The Supreme Court held the Secretary had the power to reimpose restrictions on lands once unrestricted, but held

"The construction to be placed on these decisions is that the lands now in question, and hence the interest of the lessee in them, are not such instrumentalities of the government as will be declared immune from taxation in the absence of an express exemption by Congress and that the mere act of the Secretary in imposing the restriction is not the exercise of any power which may reside in Congress to exempt them from taxation. * * *

"In any case the Secretary of the Interior has never, by rule or regulation or other action, purported to exempt such lands from state taxation. No such action is to be implied from his authorized action in restricting the power of the Indian grantee to alienate the land."

Notwithstanding that the court was dealing with a restricted, full-blood, minor Indian, the court held that the duty of paying taxes was one step in the emancipation of the Indian, saying:

"In a broad sense all lands which the Indians are permitted to purchase out of the taxable lands of the state in this process of their emancipation and assumption of the responsibility of citizenship, whether restricted or not, may be said to be instrumentalities in that process. But they are far less intimately connected with the performance of an essential governmental function than were the restricted allotted lands, and the accomplishment of their purpose obviously does not require entire independence of state control in matters of taxation. To hold them immune would be inconsistent with one of the very purposes of their creation, to educate the Indians in responsibility, and would present the curious paradox that the Secretary by a mere conveyancer's restriction, permitted by Congress, had rendered the land free from taxation and thus actually relieved the Indians of all responsibility. There are some instrumentalities which, though Congress may protect them from state taxation, will nevertheless be subject to that taxation unless Congress speaks."

While these cases involve state taxes, Congress had the power to exempt its Indian wards from paying them. But the Supreme Court held that exemption from taxation could not be deduced from the restricted status of the land. It further held

that land purchased from accumulated savings was not as distinctly an instrumentality of government as the original allotment.

We can see no tenable distinction between land and personal property. If the surplus of an Indian invested in land is subject to state taxation, that surplus should be taxable if invested in a mortgage on the land, or in shares of stock. If Congress intended that such investments should be subject to state taxation, we can see no reason for holding that it intended to exempt the income from such investments from federal taxation. Every reason assigned for one applies to the other.

■ The whole question is one of statutory construction. Congress has the power to tax the income of an Indian from any source, just as it has the power to exempt all his property from state taxes. What did Congress intend? The Supreme Court has held it did not intend to exempt Indians as such from federal taxes; that it did not intend to exempt restricted property as such from state taxes; that property acquired for investment is not a federal instrumentality in the sense the original allotment is. While the question is not free from doubt, we are of the opinion that, as construed by the Supreme Court, the intent of Congress was to subject the income from investments of surplus funds, as well as the investments themselves, to taxation.

This view is supported by the administrative and legislative history. The Board of Tax Appeals in 1928 held that the income received by the Superintendent of the Five Civilized Tribes from securities purchased for a Creek Indian with royalties from restricted land were subject to the income tax. Snell v. Commissioner, 10 B. T. A. 1081. In 1929, in the Blackbird Case, the Board extended this doctrine to include income from an original allotment and from minerals held in trust for the Tribe. This court reversed the Blackbird Case. After the Supreme Court affirmed the Chouteau Case, the Commission promulgated a ruling, G. C. M. 9621, under which restricted Indians are exempted from tax upon such incomes as were dealt with in the Blackbird Case, but taxed upon incomes from investments of income. Since then Congress has twice re-enacted the income tax law, but has not disturbed this departmental ruling. On the contrary, in a Joint Resolution passed February 14, 1933, S. J. Res. 167 (47 Stat. 807), extending the time to members of Indian Tribes for filing claims for interest on refunds, Congress limited its application to (a) Indians who received allotments of land which were partially or wholly exempt from tax, and from which land the restrictions have or have not been removed, and (b) to taxes paid on "rents, royalties, or other gains arising from such allotted lands." Congress is therefore familiar with the distinction between income from the original heritage of the Indian and other income. There is, moreover, a reason for the distinction. The income from the allotments of many or most of the Indians is barely sufficient to support them; but oil was discovered upon the allotments of some, and those received an income much larger than their needs; when that surplus was invested and in turn produced income, there is reason in requiring such wealthy Indians to contribute to the cost of the government whose services they enjoy. In the face of this history, we conclude that Congress is content with the administrative interpretation of its acts.

The order of the Board is affirmed.

LEWIS, Circuit Judge (dissenting).

I suggest a question of jurisdiction, and am inclined to the belief that power in this court to review the Board's order does not exist. We have this anomalous procedure: The Superintendent of the Five Civilized Tribes filed a petition for review. He is an officer in the Interior Department. Counsel who represent him were employed by the Interior Department. Respondent, Commissioner of Internal Revenue, is also an officer in an executive department of the government, and he is represented by counsel in that department. Petitioner contends that Sandy Fox, an Indian whom he professes to represent, and his property are not subject to an income tax, and respondent contends to the contrary. Is this a case or controversy over which this court has jurisdiction? In Old Colony Trust Co. v. Com'r of Int. Rev., 279 U. S. 716, 49 S. Ct. 499, 502, 73 L. Ed. 918, the court in construing the act conferring jurisdiction on Circuit Courts of Appeal to review the orders of the Board of Tax Appeals quoted with approval this from the opinion of Mr. Justice Field in Re Pacific Railway Comm. (C. C.) 32 F. 241, 255:

"The judicial article of the Constitution [article 3] mentions cases and controversies. * * * The term [case] implies

the existence of present or possible adverse parties whose contentions are submitted to the court for adjudication."

The Chief Justice then said:

"The Circuit Court of Appeals is a constitutional court under the definition of such courts as given in the Bakelite Case [279 U. S. 438, 49 S. Ct. 411, 73 L. Ed. 789], supra, and a case or controversy may come before it, provided it involves neither advisory nor executive action by it.

"In the case we have here, there are adverse parties. The United States or its authorized official asserts its right to the payment by a taxpayer of a tax due from him to the government, and the taxpayer is resisting that payment or is seeking to recover what he has already paid as taxes when by law they were not properly due. That makes a case or controversy, and the proper disposition of it is the exercise of judicial power."

So the question arises whether the parties are adversaries in a case or controversy within our jurisdiction, or whether being officers of the United States government they are only seeking advisory instructions.

But on the merits I disagree with the conclusion reached by my associates. The Act of May 27, 1908 (35 Stat. 312) applies to the Five Civilized Tribes. We held in Bagby v. United States, 60 F.(2d) 80, and in Pitman v. Com'r of Int. Rev., 64 F.(2d) 740, that under the facts in each of those cases said act removed the restrictions from the allotments there under consideration, that such removal rendered each of said allotments subject to taxation, and that the rentals or royalties from said allotments were income subject to federal income tax. We further held in Chouteau v. Com'r of Int. Rev., 38 F.(2d) 976, that a certificate of competency issued to and held by Chouteau under section 2 of the Act of June 28, 1906 (34 Stat. 539) removed the restrictions from his allotment and perforce thereof from his income therefrom and rendered said income subject to federal taxation; that said certificate exempted Chouteau and his property from federal supervision, excepting his homestead; that it gave him full power to use and dispose of his property according to his own judgment and thus there was imposed on him and he assumed the same burden as other individual property owners. The Supreme Court affirmed our judgment in the Chouteau Case. Choteau v. Burnet, 283 U. S. 691, 51 S. Ct. 598, 75 L. Ed. 1353. It may al-

so be conceded that Congress may confer on the Secretary of the Interior, or other officials, power to remove from the lands of an Indian exemption from taxation, and when so removed from such lands or other property it becomes subject to taxation by state and nation. Action removing the exemption by either method expresses a clear intention by Congress to render the Indian's property subject to taxation. There could be no other intention.

Sandy Fox, the taxpayer, is a full-blood Creek Indian enrolled as a member of that tribe under a given number. It was stipulated that he and his property, both real and personal, are restricted, and that his property is under the direct supervision of the Superintendent of the Five Civilized Tribes subject to the direction of the Secretary of the Interior; that income from his allotment is so received and held; that interest on such income when invested is likewise received and held in trust as a part of his restricted funds and property. There has been no removal of restrictions as to him or his property. Nevertheless the Board held said income to be taxable. I think the Board erred. We held to the contrary in Mary Blackbird v. Com'r of Int. Rev., 38 F.(2d) 976. I can add nothing to what we said in her case. She was a full blood member of the Osage tribe. Her property from which income was received was restricted, and she did not have a certificate of competency. Like Fox, she was a ward of the government of the United States, and, like him, she had no other guardian. We held she was not subject to the tax. I can see no material difference between her and her property on the one hand and Fox and his property on the other as to the point here involved. Not only does the majority opinion overrule the Mary Blackbird Case, it also disregards the wholesome doctrine of stare decisis.

It is the duty of a trustee to invest funds in his hands. 1 Perry on Trusts (5th Ed.) § 452. Interest received by him should be added to the trust estate. United States v. Brown (C. C. A.) 8 F.(2d) 567.

It is true that the rights and duties of citizenship were conferred on Fox by section 6 of the Act of February 8, 1887 (24 Stat. 388), as amended by the Act of March 3, 1901 (31 Stat. 1447); but it was appropriately said by the Eighth Circuit in United States v. Gray (C. C. A.) 201 F. 291, 293:

"The civil and political status of the Indians does not condition the power of the

government to protect their property or to instruct them. Their admission to citizenship does not deprive the United States of its power, nor relieve it of its duty, to control their property, to protect their rights to it from the rapacity and faithlessness of the members of the superior race, to discharge faithfully its legal and moral obligations to them, and to execute every trust with which it is charged for their benefit."

See, also, National Bank of Commerce v. Anderson (C. C. A.) 147 F. 87, 90.