**UNITED STATES v. BOARD OF COM'RS OF FREMONT COUNTY, WYO., et al.**

No. 2932.

Circuit Court of Appeals, Tenth Circuit.

Oct. 10, 1944.

Writ of Certiorari Denied Jan. 29, 1945.

See 65 S.Ct. 563.

Fred W. Smith, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Carl L. Sackett, U. S. Atty., of Sheridan, Wyo., John C. Pickett, Asst. U. S. Atty., of Cheyenne, Wyo., and Vernon L. Wilkinson, of Washington, D. C., on the brief), for appellant.

John U. Loomis, of Cheyenne, Wyo. (L. A. Crofts, of Lander, Wyo., and Edward T. Lazear, of Cheyenne, Wyo., on the brief), for appellees.

George M. Tunison, of Omaha, Neb., and Charles J. Kappler, of Washington, D. C., amici curiae.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The United States brought this action against the Board of County Commissioners, the Assessor, and the Treasurer of Fremont County, Wyoming, to quiet title to certain lands, and to restrain their further assessment or sale so long as title remains in the United States. The court dismissed the action, 53 F.Supp. 395, and the United States appealed.

The basic facts are not in dispute. By the Treaty of July 2, 1863, 18 Stat. 685, the United States set apart for the Shoshone Tribe of Indians a reservation in excess of forty-four million acres of land located in Colorado, Utah, Idaho and Wyoming. By the treaty of July 3, 1868, 15 Stat. 673, the Shoshones relinquished that reservation

to the United States, and accepted in exchange a reservation of slightly more than three million acres in Wyoming, generally known as the Wind River Reservation, together with certain other benefits not material here. The United States located a large number of Northern Arapaho Indians on the reservation, and later over the protest of the Shoshones recognized the two Tribes as having equal rights to the lands constituting the reservation. Some of the lands were ceded back to the United States. They became commonly known as the ceded portion of the reservation, and the remaining as the diminished portion. The lands involved in this action are within the ceded portion of the reservation.

In 1927, Congress conferred upon the Court of Claims jurisdiction to adjudicate and render judgment upon all claims of the Shoshones against the United States growing out of the treaty of July 3, 1868, or any subsequent treaty or agreement, or any subsequent Act of Congress affecting the Tribe. 44 Stat. 1349. The action was instituted, and judgment was entered for the claimant but it was reversed. Shoshone Tribe v. United States, 299 U.S. 476, 57 S. Ct. 244, 81 L.Ed. 360. Thereafter, judgment was entered for the claimant in an amount exceeding four million dollars, and it was affirmed. United States v. Shoshone Tribe, 304 U.S. 111, 58 S.Ct. 794, 82 L.Ed. 1213. An appropriation having been made for the payment of the judgment, Congress enacted the Act of July 27, 1939, 53 Stat. 1128, 25 U.S.C.A. §§ 571–577, providing for the administration of the fund. Section 3 provides that not to exceed one million dollars shall be available for expenditure, upon the request of the Tribe and with the approval of the Secretary of the Interior, for the purchase of lands in the manner prescribed in section 6. Section 4 provides that the Secretary be authorized and directed to establish land-use districts within the diminished and ceded portions of the reservation to effect the consolidation of Indian and privately owned lands within such districts through exchange, relinquishment, donation, assignment, or purchase of lands or interests therein, including water rights or surface rights to lands, improvements thereon, and improvements on undisposed-of ceded lands, to the end that Indian land and non-Indian land holdings be consolidated for more beneficial use. Section 5 provides that the Secretary be directed to restore to tribal ownership all undisposed-of surplus or ceded lands within the land-use districts not presently under lease or permit to non-Indians, and to make like restoration of the balance of such lands progressively as the non-Indian owned lands within a given land-use district are acquired for Indian use. And section 6 provides that title to all land purchases made thereunder shall be taken in the name of the United States in trust for the Shoshone and Arapaho Tribes of the Wind River Reservation, and that all purchases shall have the approval of the Tribal Councils, or of the business committees thereof.

After the cessions back to the United States, the lands involved here were acquired by private individuals and were assessed from year to year for ad valorem taxes in Fremont County. The Secretary of the Interior purchased them with funds appropriated for the satisfaction of the judgment. The conveyances were to the United States, and title was taken in trust for the Shoshone and Arapaho Tribes, pursuant to section 6, supra. All taxes due and owing which were a lien upon the lands up to the time title was acquired by the United States were paid in full. After title had been acquired by the United States, the taxing officials of Fremont County continued to assess the lands. They were assessed in the name of the United States, trustee, some were advertised and sold to the county for unpaid taxes, and continued assessment from year to year was threatened.

■ Article 4, Section 3, of the Constitution of the United States, vests in Congress the power of disposition of property belonging to the United States. Article 1, Section 8, authorizes Congress to enact all laws necessary and proper for carrying into execution all powers vested in the Government or in any department or officer thereof. And Article 6 provides that the laws of the United States enacted pursuant to the Constitution shall be the supreme law of the land, notwithstanding constitutions and laws of the states to the contrary. Manifestly Congress is vested with the absolute right to designate the persons to whom real property belonging to the United States shall be transferred, and to prescribe the conditions and mode of the transfer; and a state has no power to interfere with that right or to embarrass the exercise of it. Property owned by the United States is immune from taxation by the state or any of its subdivisions. Van Brocklin v. Tennessee, 117 U.S. 151, 6 S. Ct. 670, 29 L.Ed. 845; Irwin v. Wright, 258 U.S. 219, 42 S.Ct. 293, 66 L.Ed. 573;

Lee v. Osceola Improvement District, 268 U.S. 643, 45 S.Ct. 620, 69 L.Ed. 1123; Mullen Benevolent Corp. v. United States, 290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192; United States et al. v. Allegheny County, Pa., 322 U.S. 174, 64 S.Ct. 908. Congress may in its discretion waive the immunity and expressly consent that real or personal property belonging to the United States shall be subject to taxation under state authority. Mayo v. United States, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504. But it has not done so in this instance.

These lands were acquired with funds belonging to the Indians; and under section 6, supra, the title is held in trust for the Tribes. But the legal title is in the United States. Generally, the possession of the legal title by the United States determines the fact and right of ownership in respect of immunity from taxation under state authority. Wisconsin Railroad Co. v. Price County, 133 U.S. 496, 10 S.Ct. 341, 33 L.Ed. 687. And where the legal title is in the United States, lands are not subject to state or county taxes even though the United States holds them in trust for an Indian or a tribe. United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; McCurdy v. United States, 264 U.S. 484, 44 S.Ct. 345, 68 L.Ed. 801. In Shaw v. Gibson-Zahniser Oil Corp., 276 U.S. 575, 48 S.Ct. 333, 72 L.Ed. 709, it was held that oil taken from restricted land of an Indian was subject to a production tax levied under state law. In Oklahoma Tax Commission v. United States, 319 U.S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612, it was determined that a state may impose an inheritance tax upon the transfer of restricted land belonging to the estate of a deceased Indian, except as to land exempt from direct taxation. In United States v. Mummert, 8 Cir., 15 F.2d 926, it was held that land purchased with restricted funds of an Indian is subject to county ad valorem taxes. And in United States v. Hester, 10 Cir., 137 F.2d 145, it was determined that restricted but taxable land belonging to an Indian is subject to sale in accordance with state law to enforce collection of delinquent taxes. But in all of those cases title to the land was in the Indian, not the United States.

It is settled law that benefits received by a contractor from transactions with the Government are not exempt or immune from income tax levied under state law. James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318. Similarly, salaries paid by the Government are subject to state taxes. Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R., 1466. And materials destined to be furnished to the Government are not free from sales taxes imposed by state law on the contractor's vendor. Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615. But commercial fertilizer purchased by the United States for distribution to consumers as part of the national soil conservation program may not be subjected to payment of an inspection fee under state law. Mayo v. United States, supra. And equipment furnished by the United States for use by a manufacturer in the production of ordnance for the Government with the understanding that such equipment shall remain the property of the United States is not subject to ad valorem taxes under state law while devoted to that use. United States et al. v. County of Allegheny, supra. The distinction running through these cases is that private property and interests may be taxed under state law, though they bear a close relation to Governmental activities; but that taxes imposed by state law may not be laid directly upon property or activities of the Government itself. Since the title to these lands is in the United States, they must be treated as property of the United States and therefore immune from state or county taxes, even though the title is held in trust for the Tribes of Indians. United States v. Rickert, supra; McCurdy v. United States, supra.

In an effort to sustain the taxability of these lands, emphasis is placed upon the fact that prior to the time of their acquisition in the manner previously outlined, they were on the tax rolls and taxes were regularly paid on them; and it is urged that in the absence of a controlling Act of Congress, they should not be adjudged immune from taxation. The Act under which they were acquired is silent in respect of taxes. But in Van Brocklin v. Tennessee, supra, the lots rested in private ownership and were subject to taxes prior to the time they were acquired by the United States. There was no Act of Congress declaring them exempt. Yet it was held in sweeping language that they were not subject to taxes laid by state law while title remained in the United States. The status of these lands in point of amenability to state or county taxes prior to the time the United States acquired them has no decisive bearing upon the legal question of their immunity while

the title remains in the United States. It is common knowledge that the United States has from time to time acquired large tracts of land and other valuable real property in various states, and that the states and their subdivisions have sustained resulting diminution in needed revenue. But the matter is one of policy for Congress. It lies beyond the range of judicial decree.

The judgment is reversed and the cause remanded with directions to enter judgment as prayed for in the complaint.